KAFKER, J.
**2 The plaintiff Felice Gammella worked greeting customers, helping out behind the bar, taking food to tables, and assembling delivery orders at several Boston-area restaurants operated by the defendant P.F. Chang's China Bistro, Inc. He alleges on behalf of himself and a putative class of similarly situated employees that the defendant had a common practice of violating the "reporting pay" or "three-hour" requirement of 454 Code Mass. Regs. § 27.04(1) (2015), which requires employers to pay employees three hours' wages at no less than the minimum wage **3 if they report for a scheduled shift of three or more hours but are involuntarily dismissed before they have worked three hours. The plaintiff brings suit under the Wage Act, G. L. c. 149, § 150 (Wage Act), and what is known as the minimum fair wage law, *694 G. L. c. 151, § 20 (collectively, wage laws).[2]
At issue is whether (1) either of the wage laws specify a different standard for class certification from that set forth in Mass. R. Civ. P. 23, as amended, 471 Mass. 1491 (2015) ( rule 23 ); (2) the numerosity requirement for class certification under rule 23 is satisfied when a plaintiff provides reasonable information to infer that there are hundreds of employees who reported for their scheduled shifts of three or more hours but received less than three hours of pay, but there are a variety of potential reasons why an employee would not receive the three hours of pay, some of which are justified and others of which are not, and the defendant has failed to identify in its records why any employee received less than three hours of pay and refused to provide in discovery the names of the employees involved; (3) an offer of judgment pursuant to Mass. R. Civ. P. 68, 365 Mass. 835 (1974) ( rule 68 ) or tender of an offer to the only named plaintiff in a putative class action can cause the plaintiff's claim to become moot when the plaintiff rejects the offers and informs the court of his intention to appeal the denial of class certification.
We conclude that rule 23 provides the correct standard for determining class certification in a claim under the wage laws. Because we hold that the plaintiff met his burden of demonstrating numerosity under that rule, we reverse the denial of the plaintiff's motion for class certification on this ground. And because the plaintiff did not accept either of the defendant's offers and informed the court of his intention to appeal from the denial of class certification, we also hold that the defendant's motion to dismiss for mootness was improperly granted. We accordingly reverse the motion judges' orders and remand the case for further proceedings consistent with this opinion.[3]
**4 1. Background and procedural history. The plaintiff worked at the defendant's restaurants for most of the period from 2007 to 2015. As required by the employer, the plaintiff and other employees clocked in and out of a timekeeping system. The hours recorded in the timekeeping system formed the basis for the employees' compensation. Like the servers, bartenders, hosts, and other staff employed by the defendant, the plaintiff was compensated on an hourly basis at the minimum wage.
The plaintiff brought suit in November 2014 under the wage laws on behalf of himself and a putative class of employees who allegedly had been denied pay for reporting to work (reporting pay) in violation of a regulation of the Division of Occupational Safety, issued pursuant to G. L. c. 151, requiring that "[w]hen an employee who is scheduled to work three or more hours reports for duty at the time set by the employer, and that employee is not provided with the expected hours of work, the employee shall be paid for at least three hours on such day at no less than the basic minimum wage."
*695 454 Code Mass. Regs. § 27.04(1).[4] In his deposition, the plaintiff testified that, on numerous occasions, despite being scheduled to work three or more hours, he was involuntarily dismissed and forced to clock out before he had worked three hours.[5] He stated that, in these instances, he was not given three hours' pay but only paid for his actual hours worked.
Although the defendant claimed that its policy was to comply with the three hour reporting pay requirement, it produced no evidence in discovery that it had ever done so.[6] In particular, the defendant produced reports revealing that, in twenty instances involving the plaintiff, and in approximately 7,000 instances involving hundreds of other employees, the defendant did not provide **5 reporting pay when the plaintiff and these employees were scheduled to work a shift of three or more hours but clocked out before they had worked three hours.[7] These reports did not reflect why the employees clocked out before working three hours of a scheduled shift. Nor did the defendant have a system in place to record the reasons why such employees would leave early. Moreover, the reports only identified the other employees by their employee number, and the defendant did not fulfill the plaintiff's discovery requests for the identity of all the employees.[8]
In his deposition testimony, the defendant's regional vice-president of operations admitted that he had no way of knowing if the hundreds of employees on the report had been involuntarily dismissed. Nonetheless, the vice-president claimed that employees often voluntarily asked and were granted permission to leave before three hours of their shifts had elapsed. He further testified that the defendant's practice was not to provide reporting pay in those circumstances, or in cases where the defendant's managers decided to close a restaurant early due to inclement weather, *696 ordered an employee to leave work early for violating company policy, or solicited volunteers to leave early because a restaurant was not busy.
Following discovery, the plaintiff moved to certify a class comprising "[a]ll [defendant's] hourly employees who worked in Massachusetts at any time from November 25, 2011 to the present, and who had at least one shift where they were scheduled to work three or more hours but worked less than three hours, including without limitation" all the employees identified by employee number on the defendant's report who had worked less **6 than three hours of a scheduled shift without receiving reporting pay. The defendant opposed the motion.[9] After a hearing on the motion, the judge denied class certification.
In his written decision, the judge determined that the defendant neither provided the plaintiff with reporting pay nor, based on its timekeeping records, had it "identified a single instance" from 2011 to 2015 where it had provided reporting pay to any other Massachusetts employee who had been scheduled for a shift of three or more hours but worked less than three hours. The judge nonetheless concluded that, pursuant to an opinion letter from the Executive Office of Labor and Workforce interpreting the reporting pay requirement, an employer did not have to provide reporting pay where an employee chose to leave work before three hours of a scheduled shift had elapsed " 'completely on a voluntary basis,' free from any express or implied pressure from the employer."[10] Relying on the opinion letter, the judge redefined the plaintiff's proposed class to "contain only employees who were involuntarily cut before three hours and employees who were offered a choice to leave before three hours, but that choice was 'not free from express or implied pressure from the employer' (i.e., the employee was essentially involuntarily cut)." He found that it was "impossible ... to determine from the time-keeping records ... whether there are any employees who would fall into this class." He thus concluded that the class was insufficiently numerous to satisfy the certification requirements of rule 23.
After the plaintiff's class certification motion had been denied, the defendant made two offers to the plaintiff that purported to provide complete relief on his individual claim. Pursuant to rule 68, the defendant first made an offer ( rule 68 offer) to have judgment entered against it for $ 962.08 plus prejudgment interest as well as costs and attorney's fees associated with the plaintiff's individual claim, while expressly excluding any fees related to his class-based claims. In the rule 68 offer, the defendant "expressly denie[d] all ... liability and denie[d] [p]laintiff's allegations,"
**7 and explained that the offer would "resolve, finally and fully, the claims and causes of action alleged by [p]laintiff" and that "[i]f this offer is accepted, no further relief shall be granted to [p]laintiff." The offer provided that it "shall expire if not accepted in the manner and within the timeframe provided in Rule 68," specifically that if the plaintiff did not accept the offer within ten days, "it is deemed withdrawn."
*697 [11] The plaintiff did not accept the offer.
Subsequently, the defendant made an offer in the form of a certified check for $ 1,732.50 and an accompanying letter (tender offer) that were both hand delivered to the plaintiff's counsel. The letter explained that the offer would "tender[ ] complete relief on the individual claim" because the "amount tendered is more than what [the plaintiff] could hope to obtain if he were to prevail at trial." Like the rule 68 offer, the letter stated that the defendant would pay reasonable attorney's fees, costs, and interest with respect to the plaintiff's individual claim. The letter further stated that "[s]hould you choose to not respond to or reject this tender, we will seek to dismiss this action." As with the rule 68 offer, the tender offer was rejected by the plaintiff.
The defendant then moved to dismiss the case on the grounds that through its rule 68 offer and tender offer it had "voluntarily presented [the plaintiff] all available statutory damages for his individual claims."[12] Regardless of the plaintiff's refusal to accept those offers, the defendant argued, "[d]ismissal is appropriate as to the named [p]laintiff's individual claims because they are moot and [the plaintiff] no longer has a concrete, personal stake in this matter. Moreover, there are no class claims pending because the Court denied [p]laintiff's Motion for Class Certification" and plaintiff "had the opportunity to file an interlocutory appeal of the class certification denial and elected not to do so." In short, the **8 defendant argued, the plaintiff "does not have standing to serve as a class representative for any putative class" he might seek to revive. The plaintiff opposed the motion, arguing that unaccepted settlement offers could not render moot the claims of a named plaintiff in a class action and that, because he had no right to take an interlocutory appeal, his right to appeal the denial of his motion for class certification "remain[ed] a live issue."
The motion judge held a hearing on the motion to dismiss. The defendant's counsel stated at the hearing that, if its motion were granted, the plaintiff still could take "an appeal of the denial of class certification." The judge granted the defendant's motion on the grounds that the "plaintiff has been provided with complete relief as to his individual claims by the defendant and accordingly those claims are moot. The court therefore lacks subject matter jurisdiction over this matter." The judge also noted that the plaintiff's motion for class certification had earlier been denied. In his order of dismissal, the judge instructed the plaintiff to submit an affidavit and documents supporting an award of fees and costs. The parties subsequently entered into a stipulation for attorney's fees and costs with respect to the plaintiff's individual claim. The stipulation was incorporated into the final judgment entered *698 by the judge. We transferred the defendant's appeal from the Appeals Court on our own motion.
2. Discussion. a. Certification standard for class actions under Wage Act or minimum fair wage law. As a threshold matter, we address the plaintiff's argument that the wage laws "confer[ ] rights greater than those conferred more generally" under rule 23 with respect to class action litigation. To achieve class certification, rule 23 (a) requires plaintiffs to show that: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Additionally, under rule 23 (b), plaintiffs must show that the "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." By contrast, G. L. cc. 149 and 151 simply authorize an allegedly aggrieved employee to "prosecute in his own name and on his own behalf, or for himself and for others similarly situated, a civil **9 action for injunctive relief, for any damages incurred and for the full amount of the minimum wages less any amount actually paid to him by the employer" (emphasis added). G. L. c. 151, § 20. See G. L. c. 149, § 150. See also note 13, infra.
The plaintiff argues that a more lenient class certification standard should thus be inferred from these provisions of the wage laws. The defendant argues that the statutory authorization of a private right of action, including the right to bring a class action, does not alter the certification standards set out in rule 23, and thus that the motion judge correctly applied these standards to a class action brought under the wage laws. We agree with the defendant, and accordingly we hold that rule 23 provides the correct framework for analyzing a certification claim brought under the Wage Act or the minimum fair wage law.
We begin with the text of the wage laws. See Northeast Energy Partners, LLC v. Mahar Regional Sch. Dist., 462 Mass. 687, 692, 971 N.E.2d 258 (2012) ("The starting point of our analysis is the language of the statute" [citation omitted] ). As mentioned, both G. L. c. 149, § 150, and G. L. c. 151, § 20, allow an aggrieved employee to bring suit against his or her employer "on his own behalf, or for himself and for others similarly situated." The legislative history of these statutes makes clear that the primary purpose of this language is to authorize class actions in statutes that did not previously provide for class actions. Indeed, the Wage Act had no private right of action until this provision was added.[13] With this purpose *699 in mind, it is clear that a "civil action" for "others similarly situated" simply refers to the "substantive right to bring a **10 class proceeding." Machado v. System4 LLC, 465 Mass. 508, 514-515, 989 N.E.2d 464, S.C., 466 Mass. 1994 (2013). It does not define the class certification standards themselves. Those standards are provided by rule 23.
Moreover, nothing in the statutory text or legislative history suggests that the Legislature meant to create a lower standard for class certification than rule 23 when it added this provision to the wage laws. See Northeast Energy Partners, LLC, 462 Mass. at 692, 971 N.E.2d 258 (statutory text to be "considered in connection with the cause of its enactment" to discern legislative intent [citation omitted] ). By contrast, where we have departed from rule 23, the statutory language has provided a clear basis for doing so. In particular, the statutory language authorizing class actions under a provision of the consumer protection statute, G. L. c. 93A, § 9 (2), "differs in significant respects from that of [ rule 23 ]." Aspinall v. Philip Morris Cos., 442 Mass. 381, 391, 813 N.E.2d 476 (2004). That statute contains highly detailed language that closely follows the specific certification requirements of rule 23, while deliberately omitting some of those requirements.[14] For that reason, we have "recognized that the requirements for class certification under the statutory class action provision in § 9 (2) are easier to satisfy than under [ rule 23 ]." Feeney v. Dell Inc., 454 Mass. 192, 201, 908 N.E.2d 753 (2009). The class action provision of the wage laws do not contain this sort of specific discussion of certification requirements. Nor does the legislative history of the wage laws reveal that the Legislature meant to replace the general criteria for class certification in rule 23 with different criteria for a class action brought under the wage laws.
Moreover, it is clear from our previous application of rule 23 to class actions brought under the wage laws in Salvas v. Wal-Mart Stores, Inc., 452 Mass. 337, 371-372, 893 N.E.2d 1187 (2008), that rule 23 has the necessary structure and adaptability to advance the "very legitimate policy rationales underlying the Legislature's decision to **11 provide for class proceedings under the Wage Act," in particular the need to deter violations of the law and allow certain plaintiffs to come forward on behalf of others in the class who may fear retaliation. Machado, 465 Mass. at 515, 989 N.E.2d 464 (2013). See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 515 n.12, 989 N.E.2d 464 (discussing these rationales). As we observed in Salvas, 452 Mass. at 371, 893 N.E.2d 1187, where we reversed a motion for decertification of a putative class of hourly employees asserting claims under the wage laws, "One of the great strengths of the rule 23 class action device is its plasticity. Case-by-case considerations of practicality and fairness have enabled *700 rule 23 certification decisions to adapt appropriately to a variety of contexts, even within the same litigation." In particular, we stated in Salvas, 452 Mass. at 369, 893 N.E.2d 1187, that rule 23 serves the "policy at the very core of the class action mechanism," namely "to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights" (citation omitted). We have thus recognized that rule 23 is well suited to class action litigation in the employment context, including under the Wage Act and the minimum fair wage law.
In short, consistent with our decision in Salvas, we apply rule 23 to claims under the wage laws at issue here. There is no indication from the text or legislative history of these wage laws that the Legislature intended to modify the class certification criteria contained in rule 23. Additionally, we have recognized that the adaptable requirements of rule 23 well serve the policy rationales supporting class actions in the employment context. We thus hold that the motion judge correctly used the rule 23 factors to analyze a claim brought pursuant to the wage laws at issue here.
b. Denial of class certification. We review the judge's decision not to certify the plaintiff's proposed class under rule 23 for an abuse of discretion. Salvas, 452 Mass. at 361, 893 N.E.2d 1187. Although a judge has "broad discretion" whether to grant or deny class status, "[i]ndicia of an abuse of discretion include errors of law... such as when a judge ... denies class status by imposing, at the certification stage, the burden of proof that will be required of the plaintiffs at trial." Id. at 361, 893 N.E.2d 1187 (quotation and citation omitted). The error exemplified above is exactly what occurred here.
The judge denied certification on the grounds that the plaintiff had failed to satisfy the numerosity requirement contained in rule 23 (a), which mandates that the class be "so numerous that joinder **12 of all members is impracticable."[15] As discussed above, the plaintiff identified as putative class members hundreds of unnamed employees who, on approximately 7,000 occasions, worked less than three hours on shifts scheduled for three or more hours but did not receive reporting pay. The defendant did not maintain records explaining why any of these employees left early and admitted it could not know if they had been involuntarily dismissed. And the defendant refused to provide the identities of these employees to the plaintiff in response to his discovery requests.
At the class certification stage, this is "information sufficient to enable the motion judge to form a reasonable judgment that the class meets the requirements of *701 rule 23" with respect to the numerosity requirement (citation omitted). Salvas, 452 Mass. at 363, 893 N.E.2d 1187. The combination of thousands of instances of nonpayment to hundreds of employees, the absence of any record keeping justifying the nonpayments, and a refusal to provide the names of the employees involved, made it reasonable to infer that the number of plaintiffs would satisfy the numerosity requirement. See, e.g., Reid v. Donelan, 297 F.R.D. 185, 189 (D. Mass. 2014), quoting McCuin v. Secretary of Health & Human Servs., 817 F.2d 161, 167 (1st Cir. 1987) (court may draw " 'reasonable inferences from the facts presented to find the requisite numerosity,' "); W.B. Rubenstein, 1 Newberg on Class Actions § 3.13 at 215 (5th ed. 2011) (1 Newberg on Class Actions) (court is to make "commonsense assumptions regarding the number of putative class members").
The motion judge should also have recognized that the dollar amount that each employee could potentially recover was likely to be too small for individual suits to be practicable and that employees bringing such individual suits had reason to fear retaliation.
**13 See W.B. Rubenstein, 7 Newberg on Class Actions § 23.18 at 665 (5th ed. 2017) (7 Newberg on Class Actions) (discussing factors relevant to numerosity determination in employment context). See also Salvas, 452 Mass. at 369, 893 N.E.2d 1187 (permitting "small recoveries" is "policy at the very core of the class action mechanism" [citation omitted] ). In concert, all these considerations demonstrate that the plaintiff met the class certification threshold for the numerosity requirement. See 7 Newberg on Class Actions, supra at § 23.18, at 667 ("the numerosity requirement is easily met in most employment cases, as in most class actions generally").
The motion judge nonetheless concluded that it could not make the numerosity determination "[w]ithout a more specific numerical allegation or evidence, particularly considering that not all employee departures before three hours are necessarily eligible for reporting pay." He further concluded that such uncertainty meant that he could not "reasonably determine that there is a sufficient number of class members such that class certification would be a better approach than joinder of individual plaintiffs." As we have previously stated, however, the burden, at the class certification stage, "is of a different order than the party's burden of proof at trial." Salvas, 452 Mass. at 363, 893 N.E.2d 1187. "[N]either the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies the Rule." Id. at 363, 893 N.E.2d 1187, quoting Weld v. Glaxo Wellcome, Inc., 434 Mass. 81, 84-85, 746 N.E.2d 522 (2001). Uncertainty as to the number of plaintiffs, due to the possibility of affirmative defenses regarding some of the plaintiffs, is not a grounds for denying class certification, at least when hundreds of employees are affected by an apparent prohibited "class-wide practice" and the employer's own record-keeping deficiencies cause the uncertainty. Cf. Salvas, 452 Mass. at 357, 367, 893 N.E.2d 1187.
Indeed, this was the case in Salvas. There, the defendant employer likewise argued that class certification should be denied because some employees might have voluntarily skipped breaks, and hence would not have been injured by the employer's allegedly unlawful policy of denying breaks.[16]
*702 Id. at 356 & n.53, 893 N.E.2d 1187. We disagreed, explaining that voluntariness was a "disputed issue of **14 material fact with regard to an affirmative defense" that the employer might offer at trial. Id. at 367, 893 N.E.2d 1187. And we held that the possible presence of some "uninjured class members" should not defeat certification where there was sufficient evidence to infer a prohibited class-wide payment practice. Id. at 357, 370, 893 N.E.2d 1187. Cf. Bell v. PNC Bank, Nat'l Ass'n, 800 F.3d 360, 380 (7th Cir. 2015) ("[p]laintiffs need not prove that every member of the proposed class has been harmed before the class can be certified"); 1 Newberg on Class Actions, supra at § 2:3 (Supp. 2018) ("possibility that a well-defined class will nonetheless encompass some class members who have suffered no injury" is "generally unproblematic"). See Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975), cert. denied, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976) (trial judge deciding class certification motion "is necessarily bound to some degree of speculation by the uncertain state of the record on which he must rule").[17]
In Salvas, we also rejected the motion judge's reliance on the defendant's own record-keeping deficiencies as a grounds to deny class certification. Salvas, 452 Mass. at 356-357, 367, 893 N.E.2d 1187. The fact that the defendant's time-keeping "records were mute" as to the reasons for the missed breaks did not support the denial of certification where it was sufficiently clear that there was an unlawful over-all policy. Another instructive case is Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993), where a class of public assistance applicants alleged that their applications had been delayed beyond the time required by law, but the defendants had failed to maintain records explaining the reasons for the delays, and hence it was unknown whether particular delays were due to applicant error. The court in Robidoux concluded that the "[p]laintiffs have presented documentary evidence of delays in a sufficient number of cases to meet the numerosity requirement" and that the defendants "cannot prevail by claiming that delays are due to applicant fault and meanwhile fail[ing] to document its claim." Id. Here, as in Salvas and Robidoux, we conclude that record-keeping deficiencies do not provide justification for the denial of class certification. This **15 is particularly true because, as discussed infra, a judge has the discretion to decertify the class if it turns out that the numerosity determination was incorrect. See Kwaak v. Pfizer, Inc., 71 Mass. App. Ct. 293, 302 n.8, 881 N.E.2d 812 (2008), quoting School Comm. of Brockton v. Massachusetts Comm'n Against Discrimination, 423 Mass. 7, 14 n. 12, 666 N.E.2d 468 (1996) and General Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).[18] *703 For the foregoing reasons, we hold that the judge abused his discretion when he concluded that the plaintiff did not satisfy the numerosity requirement in the instant case. We accordingly vacate the order denying class certification on the basis of the numerosity requirement and remand for further consideration of **16 the other factors bearing on class certification.[19]
c. Mootness. We next consider whether the motion judge properly dismissed the plaintiff's case for lack of subject matter jurisdiction. As mentioned, the plaintiff's class certification motion had been denied and the plaintiff had not yet appealed when the defendant moved to dismiss the case. The judge dismissed the entire case on the grounds that the defendant's rule 68 offer and tender offer provided the plaintiff with "complete relief as to his individual claims ... and accordingly those claims are moot." We review dismissal for lack of subject matter jurisdiction de novo. See Indeck Me. Energy, LLC v. Commissioner of Energy Resources, 454 Mass. 511, 516, 911 N.E.2d 149 (2009).
We begin by considering whether an unaccepted rule 68 settlement offer or a monetary tender designed to satisfy the individual claims of a named plaintiff in a putative class action can render those individual claims moot, thus leading to dismissal of the entire case, even when the class certification decision has not yet been appealed. Regarding the effect of a rule 68 offer, we are instructed by the United States Supreme Court's consideration of the issue in *704 Campbell-Ewald Co. v. Gomez, --- U.S. ----, 136 S.Ct. 663, 193 L.Ed.2d 571 (2016) ( Campbell ). There, a plaintiff in a putative class action suit had not yet moved for class certification when the defendant offered the plaintiff his individual monetary damages as well as requested injunctive relief pursuant to Fed. R. Civ. P. 68. Id. at 667-668. The plaintiff rejected the offer, and the defendant moved to dismiss both the individual and class claims for mootness. Id. at 668. The Supreme Court, relying on "basic principles of contract law," ibr.US_Case_Law.Schema.Case_Body:v1">id. at 670, held that an "unaccepted settlement offer or offer of judgment does not moot a plaintiff's case," id. at 672, because "with no settlement offer still operative, the parties remained adverse," ibr.US_Case_Law.Schema.Case_Body:v1">id. at 670-671. Because the individual claim was not moot, the putative class claims also "retain[ed] vitality." Id. at 672.
Here, as mentioned, following the denial of the motion for class certification, the defendant first made a rule 68 offer and then made a tender offer to the plaintiff in amounts that purported to **17 satisfy his individual monetary damages. The defendant concedes that the rule 68 offer "was not accepted" by the plaintiff. We see no reason to apply a different analysis to a lapsed and unaccepted offer under rule 68 from that which the Supreme Court in Campbell applied to an offer made pursuant to the analogous Federal rule: both rules, for example, state that an offer will expire within a certain time frame, explain that an offer not accepted is deemed withdrawn, and penalize a party who rejects an offer by requiring the rejecter to pay the offeror's costs from the date of the offer if the rejecter ultimately receives a less favorable judgment.[20] Moreover, the defendant expressly stated in its rule 68 offer that the plaintiff need not accept the offer. Under basic principles of contract law, we accordingly conclude that the suit of a plaintiff who rejects a defendant's offer of judgment under rule 68 is not rendered moot because the parties remain adverse. See, e.g., Lambert v. Fleet Nat'l Bank, 449 Mass. 119, 123, 865 N.E.2d 1091 (2007) ("axiomatic" principle of contract law that parties must agree on material terms of contract and intend to be bound by that contract [citation omitted] ). For that reason, the class claims likewise "retain[ed] vitality." Campbell, 136 S.Ct. at 672.
The defendant nonetheless argues that this case is distinguishable from Campbell because, in addition to its rule 68 offer, it made the plaintiff a tender offer in the form of a certified check that was also in an amount purportedly providing complete relief on the plaintiff's individual claim. It is true that the Supreme Court expressly left open in Campbell the question whether the defendant's deposit of the "full amount of the plaintiff's individual claim in an account payable to the plaintiff," followed by the court's entry of "judgment for the plaintiff in that *705 amount," **18 could render moot the individual claim of a named plaintiff who has not yet moved for class certification. Campbell, 136 S.Ct. at 672. Here, however, the plaintiff had moved for class certification. See Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) ( Roper ).[21] Furthermore, like most courts to have considered that open issue, we do not find the defendant's distinction between its tender offer and its rule 68 offer persuasive: "[a]lthough the means are technically different, the result is the same." 1 Newberg on Class Actions, supra at § 2:15, at 133.[22] The defendant **19 concedes that the plaintiff rejected its tender offer. Under similar principles of contract law, we conclude that the suit of a plaintiff who rejects a defendant's tender offer is not rendered moot. See Barron Chiropractic & Rehabilitation, P.C. v. Norfolk & Dedham Group, 469 Mass. 800, 805, 17 N.E.3d 1056 (2014) (parties may reject tender offers and litigate their claims). Because the individual claims are live, the class claims likewise would continue.
Furthermore, it is well settled under Federal law that, even where a named plaintiff's individual claim is rendered *706 moot, class claims may remain live where the plaintiff has yet to appeal from the denial of a motion for class certification. 1 Newberg on Class Actions, supra at § 2:15, at 74 (Supp. 2018) (describing "well-settled" Federal rule under which "mooting of the named plaintiff's claims after a decision on class certification" -- including denial of class certification -- "does not moot the class action" [emphasis omitted] ). See, e.g., United States Parole Comm'n v. Geraghty, 445 U.S. 388, 404, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) ("an action brought on behalf of a class does not become moot upon expiration of the named plaintiff's substantive claim, even though class certification has been denied"). Roper is particularly relevant. In that case, as here, the plaintiffs' motion for class certification was denied; the defendant provided complete tender to the named plaintiffs in the amounts of their individual claims, which the plaintiffs rejected; and the trial judge entered judgment over the named plaintiffs' objections. Roper, 445 U.S. at 329-330, 100 S.Ct. 1166. The Court concluded that this was error: although a "final judgment fully satisfying named plaintiffs' private substantive claims would preclude their appeal on that aspect of the final judgment," the plaintiffs would nonetheless retain the "right to take an appeal on the issue of class certification." Id. at 333, 100 S.Ct. 1166.[23] It explained that to "deny the right to appeal simply because the defendant has sought to 'buy off' the individual private claims of the named plaintiffs **20 ... would frustrate the objectives of class actions" and "invite waste of judicial resources" by requiring multiple plaintiffs with low-value claims to bring suit. Id. at 339, 100 S.Ct. 1166. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 341, 100 S.Ct. 1166 (Rehnquist, J., concurring) (rule requiring named plaintiff to "accept a tender" of his or her "individual claims" would "give the defendant the practical power to make the denial of class certification questions unreviewable"). We conclude that, even if the individual plaintiff's claim had become moot, this reasoning would apply here. We thus reject the defendant's argument that a plaintiff "has had [his or her] bite at the class action 'apple' " and faces dismissal for mootness when he or she has not yet appealed the denial of a motion for class certification.[24]
We recognize that the mootness issue is particularly important in this case because no other named plaintiff has yet been identified. Given the hundreds of potential plaintiffs affected by the failure to provide reporting pay, and the possibility of further discovery, we do not consider this to be a proper grounds to deny certification. 1 Newberg on Class Actions, supra at § 3:13, at 211 (not fatal to certification that the plaintiff did "not allege the ... specific identity of proposed class members." Cf.
*707 Weld, 434 Mass. at 84, 746 N.E.2d 522 (only single named plaintiff had standing). As mentioned, the plaintiff did not know the identities of the putative class members because the defendant used aggressive discovery tactics to maintain a strategic "information monopoly." 1 Newberg on Class Actions, supra at § 3:13, at 213 n.4, quoting Jackson v. Foley, 156 F.R.D. 538, 542 (E.D.N.Y. 1994). While claiming that the plaintiff was not entitled to class-wide discovery, for example, the defendant was able to obtain affidavits from employees in the plaintiff's putative class to support its own case. The plaintiff did not have an opportunity to identify those employees who did not receive reporting pay, learn the reasons why, and invite their participation in the class action. Certification should not be thwarted where the defendant's opposition is based on information in the defendant's possession that the defendant itself asserted plaintiff did not need and then used strategically against the plaintiff.
**21 Although we conclude that neither the plaintiff's individual nor his class claims are moot, we emphasize that the remaining certification factors, for example whether the plaintiff is a typical class representative, still need to be decided on remand. And even if certification is granted, we further emphasize that a "decision as to class certification is not immutable" and that "after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation" (citation omitted). Kwaak, 71 Mass. App. Ct. at 302 n.8, 881 N.E.2d 812.
3. Conclusion. For the foregoing reasons, we reverse the denial of the plaintiff's motion for class certification and the granting of the defendant's motion to dismiss. We remand the matter to the trial court for further proceedings consistent with this opinion.
So ordered.

General Laws c. 149, § 150 (Wage Act), allows an employee to bring suit for wages wrongfully withheld under G. L. c. 149, § 148. General Laws c. 151, § 20, allows an employee who is paid by an employer "less than the minimum fair wage to which the person is entitled under or by virtue of a minimum fair wage regulation" to bring suit to recover "the full amount of the minimum wages less any amount actually paid to him by the employer."

We acknowledge the amicus briefs submitted in support of the plaintiff by the Center for Health Law & Policy Innovation of Harvard Law School, the Immigrant Worker Center Collaborative and the Massachusetts Employment Lawyers Association, and Mark D. Stern P.C; and in support of the defendant by the New England Legal Foundation.

This regulation was formerly 455 Code Mass. Regs. § 2.03(1) (2003).

The plaintiff stated that the defendant's managers would always tell him that "you're cut" or "we're not busy, you're cut." The plaintiff suggested that the managers involuntarily dismissed him in the hope that he would quit.

The defendant claimed that it posted the reporting pay requirement on posters in all its restaurants and distributed a manual to its managers explaining that, under Massachusetts law, employees were to receive three hours of "show up pay" at no less than the minimum wage "regardless of whether actual work is assigned," the only specified exception being if the "employee was originally scheduled to work for fewer than three hours." It also claimed that its managers were able to adjust the hours that an employee clocked into the time-keeping system so that the employee received reporting pay when appropriate.

The defendant produced the reports in response to discovery requests that sought to identify instances from 2011 to 2015 when the plaintiff and any other employees "were scheduled to work a shift of more than three hours but were instructed to clock out after working fewer than three hours of that shift." In response to a request for information concerning the "number of hours paid" in these circumstances, the defendant stated that its "employees are paid for the number of hours worked" (emphasis added).

The defendant provided the identities of the managers at the locations where the plaintiff worked to the plaintiff. Despite the plaintiff's discovery requests for the names of all the other employees, the defendant refused to provide the information on the grounds that it was "confidential," the plaintiff was not entitled to class-wide discovery with respect to the names, and the "[p]laintiff [did] not need the names and contact information of putative class members to advance class certification." Instead, the defendant proposed to provide "a random, representative sample of employee names and contact information." The plaintiff did not pursue this offer.

The defendant attached twenty affidavits from its managers and employees to its opposition to the plaintiff's motion for class certification. The plaintiff moved to have these affidavits struck or disregarded on the grounds that they had not previously been disclosed, despite his request for the identities of putative class members. The judge did not consider the affidavits in his decision, and accordingly we do not rely on them here.

See Minimum Wage Opinion Letter 1-26-09, available at https://www.mass.gov/files/documents/2017/10/26/MW%20Opinion%2001-26-09.pdf [https://perma.cc/9XNR-YU28].

The defendant's offer of judgment pursuant to Mass. R. Civ. P. 68, 365 Mass. 835 (1974) (rule 68 offer), stated that it would be deemed withdrawn if not accepted within ten days. However, the defendant later stated that the rule 68 offer had remained open for fourteen days. The defendant appears to have confused rule 68 of the Federal Rules of Civil Procedure, which provides for a fourteen-day offer window, with the State rule, which provides for a window of ten days.

The defendant calculated the plaintiff's total damages based on the twenty instances where its timekeeping records revealed that the plaintiff had been scheduled to work three or more hours but in fact worked less than three hours. The total came to $ 425.13, including trebling under the Wage Act. The plaintiff does not seem to dispute that the monetary amounts of the offers would be sufficient to satisfy his claimed individual damages.

The Legislature added this provision to several sections of the Wage Act in 1993. See St. 1993 c. 110, §§ 177-179 (amending G. L. c. 149, §§ 27F, 27G, 27H, 150 ). We have recognized that its primary purposes in doing so was to create a private right of action in a statute that previously had been enforced only by the Commonwealth. See Lipsitt v. Plaud, 466 Mass. 240, 246, 994 N.E.2d 777 (2013) (1993 amendments to Wage Act created private right of action); Melia v. Zenhire, Inc., 462 Mass. 164, 171 n.8, 967 N.E.2d 580 (2012) (same).
By contrast, the minimum fair wage law, G. L. c. 151, § 20, provided for individual actions from its inception, but did not provide for class actions. See St. 1947, c. 432, § 1. In 2008, the Legislature amended this statute to provide for a civil action to be brought by an allegedly aggrieved employee "in his own name and on his own behalf, or for himself and for others similarly situated" (emphasis added). St. 2008, c. 80, § 7. This provision is worded identically to that conferring a private right of action in the Wage Act, and we thus infer a similar legislative intent to create a "substantive right to bring a class proceeding" where none had previously existed. Machado v. System4 LLC, 465 Mass. 508, 514, 989 N.E.2d 464, S.C., 466 Mass. 1004, 993 N.E.2d 332 (2013).

General Laws c. 93A, § 9 (2) was enacted before the Massachusetts Rules of Civil Procedure (including rule 23 ) were adopted. See Feeney v. Dell Inc., 454 Mass. 192, 201, 908 N.E.2d 753 (2009). It was "obviously written in the light of [Fed. R. Civ. P. 23 ], but some of the restrictions in the Federal rule were omitted." Baldassari v. Public Fin. Trust, 369 Mass. 33, 40, 337 N.E.2d 701 (1975). In particular, it "omits the requirements of Federal Rule 23 (b) (3) and of our Rule 23 (b) that the common questions 'predominate' over individual questions and that the class action be 'superior' to other available methods for fair and efficient adjudication." Id.

"Despite its moniker, the numerosity requirement is less about the number of class members than it is about the impracticability of joinder of the several parties." J. Greaney, K.C. Adam, & L. M. Scalisi, Deconstructing Rule 23 : A Comparison of Massachusetts and Federal Class-Action Litigation, § 2.3.1 at 11 (2013). In turn, the "determination of practicability should depend upon all the circumstances surrounding a case." Reporter's Notes (1973) to Rule 23 (a) (1), Mass. Ann. Laws Court Rules, Rules of Civil Procedure, at 508 (LexisNexis 2018-2019), quoting Demarco v. Edens, 390 F.2d 836 (2d Cir. 1968). Because the wording of the numerosity requirement is identical to that of its counterpart in Fed. R. Civ. P. 23, we may look to Federal decisions for guidance in interpreting this provision. See Baldassari, 369 Mass. at 40, 337 N.E.2d 701 (rule 23"was written in the light of the Federal rule"). "However, to the extent that rule 23 relaxes some of the requirements imposed on plaintiffs under the Federal rule, our analysis may, in certain respects, differ." Weld v. Glaxo Wellcome Inc., 434 Mass. 81, 86 n.7, 746 N.E.2d 522 (2001).

In Salvas v. Wal-Mart Stores, Inc., 452 Mass. 337, 346, 893 N.E.2d 1187 (2008), the plaintiff employees claimed that they had been denied meal and rest breaks. The defendant employer argued that some employees voluntarily skipped breaks. Id. at 356, 893 N.E.2d 1187.

The plaintiff concedes that employees who voluntarily "asked to leave early" would not be entitled to reporting pay, although he disputed that employees who the defendant asked to volunteer would truly have left voluntarily. Additionally, the defendant offers no justification for why it would not owe reporting pay in other circumstances when it required an employee to leave work early, such as closing a restaurant for inclement weather.

The judge compounded this burden of proof error when he redefined the proposed class to "contain only employees who were involuntarily cut before three hours and employees who were offered a choice to leave before three hours, but that choice was 'not free from express or implied pressure from the employer' (i.e., the employees was involuntarily cut)." As the United States Court of Appeals for the Seventh Circuit has explained: "A case can't proceed as a class action if the plaintiff seeks to represent a so-called fail-safe class -- that is, a class that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim" (quotation and citation omitted). McCaster v. Darden Restaurants, Inc., 845 F.3d 794, 799 (7th Cir. 2017). See In re Nexium Antitrust Litig., 777 F.3d 9, 22 (1st Cir. 2015) (inappropriate to "certify[ ] what is known as a 'fail-safe class' -- a class defined in terms of the legal injury"). A fail-safe class is impermissible because "a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment" (citation omitted). McCaster, supra. In the Seventh Circuit case, the class was defined impermissibly because plaintiffs "sought to represent a class of '[a]ll persons separated from hourly employment with [their employer] in Illinois between December 11, 2003, and the conclusion of this action[ ] who were subject to [the employer's] Vacation Policy ... and who did not receive all earned vacation pay benefits.' " Id."Under this definition class membership plainly turns on whether the ... employee has a valid claim. That is a classic fail-safe class." Id.
The judge essentially did the same here, contrary to the purpose of class actions. See 1 Newberg on Class Actions § 3:6 at 171-172 ("liability-begging definitions" result in "head[s] I win, tails you lose" scenario because any putative class members to whom defendant is not found liable are not in class, not bound by judgment, and can continue to litigate same issue at expense of judicial economy and contrary to purpose of class actions). Although a judge has discretion to redefine a class, that discretion must be exercised "in accord with the purposes sought to be achieved by class actions," as defined by the standards set out in rule 23. Salvas, 452 Mass. at 363, 893 N.E.2d 1187, quoting Sniffin v. Prudential Ins. Co. of Am., 11 Mass. App. Ct. 714, 723, 419 N.E.2d 308 (1981). See Sniffin, supra at 724, 419 N.E.2d 308 (discussing purposes of class action, including efficient and effective use of judicial resources, in overturning denial of class certification based on numerosity). We thus conclude that the judge committed error.

Remand is appropriate because, in the absence of any findings or conclusions with respect to the other class certification factors, we cannot determine whether the judge exercised his discretion as to these factors properly. See Commonwealth v. Lys, 481 Mass. 1, 5, 110 N.E.3d 1201 (2018) (remanding case where judge did not exercise discretion). See also Lonergan-Gillen v. Gillen, 57 Mass. App. Ct. 746, 748, 785 N.E.2d 1285 (2003) (same).

As explained in the Reporter's Notes (1973) to Rule 68, Mass. Ann. Laws Court Rules, Rules of Civil Procedure, at 1382 (LexisNexis 2018-2019), "[w]ith one slight exception [Massachusetts] Rule 68 is the same as Federal Rule 68." In relevant part, the State rule provides that a "party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment exclusive of interest from the date of offer finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." Mass. R. Civ. P. 68, 365 Mass. 835 (1974).

The plaintiff's decision not to take an interlocutory appeal from the class certification decision did not waive his right to appeal. See Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 613, 405 N.E.2d 106 (1980) ("failure to raise a given issue on an interlocutory appeal ... in no way prejudices a party's ability to secure review of such an issue on appeal following final judgment"). See also M.D. by Stukenberg v. Abbott, 907 F.3d 237, 248 n.15 (5th Cir. 2018) ("because an interlocutory appeal is permissive rather than mandatory, the [appellant] retains the right to challenge the class certification following the ultimate disposition of the case on the merits").

Most Federal courts have reacted with "suspicion or outright hostility" to attempts by defendants to render moot putative class actions by tendering full relief to the named plaintiff with respect to his or her individual claims. K. Christakis, J. Pilgrim, & J. Morrissey, "So You're Telling Me There's A Chance!": The Post-Campbell-Ewald Possibility of Mooting a Class Action by "Tender" of Complete Relief, 71 Consumer Fin. L.Q. Rep. 237, 253 (2017). See, e.g., Ung v. Universal Acceptance Corp., 190 F.Supp.3d 855, 861 (D. Minn. 2016) (rejecting defendant's argument that unaccepted tender offer rendered putative class representative's individual claim moot because "a rejected tender works in exactly the same way as a rejected offer under [Federal] Rule 68.... Hence, there is no reason to treat a rejected tender of payment any differently than a rejected offer of payment" [citation omitted] ); Getchman vs. Pyramid Consulting, Inc., U.S. Dist. Ct., No. 4:16 CV 1208 CDP, slip op. at 8, 2017 WL 713034, *3 (E.D. Mo. Feb. 23, 2017) (rejecting defendant's argument that unaccepted tender offer rendered putative class representative's individual claim moot because "a tender offer of settlement via a check that was subsequently refused and returned ... is not materially different than ... an offer of settlement").
By contrast, Demmler vs. ACH Food Companies, Inc., U.S. Dist. Ct., No. 15-13556-LTS, slip op. at 8, 2016 WL 4703875, *5 (D. Mass. June 9, 2016) held that, despite the named plaintiff's rejection of a check from the defendant providing full monetary relief on his individual claim, dismissal was warranted because no "live case or controversy exist[ed]" under art. III of the United States Constitution. Because "art. III does not apply to State courts," however, we need not follow this reasoning. LaChance v. Commissioner of Correction, 475 Mass. 757, 771 n.14, 60 N.E.3d 1157 (2016). See Weld, 434 Mass. at 88, 746 N.E.2d 522 ("State courts ... are not burdened by [Federal] jurisdictional concerns and, consequently, may determine, particularly when class actions are involved, that concerns other than standing, in its most technical sense, may take precedence"). See also S.L. Kafker & D.A. Russcol, Standing at a Constitutional Divide: Redefining State and Federal Requirements for Initiatives after Hollingsworth v. Perry, 71 Wash. & Lee L. Rev. 229, 251 (2014) ("Standing in state courts is governed by a different set of constraints and considerations than those limiting and guiding the federal courts.... [T]he states are not bound by Article III").

The Court also held that the claims of the named plaintiffs were not moot because they retained an "individual interest" in an award of class-wide attorney's fees. Deposit Guar. Nat'l Bank of Jackson, Miss. v. Roper, 445 U.S. 326, 336, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) (Roper ). To the extent that the Roper decision suggests that an unaccepted tender offer can render a named plaintiff's individual claim moot, ibr.US_Case_Law.Schema.Case_Body:v1">id. at 333, 100 S.Ct. 1166, this is not the case under Massachusetts law, as we are not bound by Art. III requirements, and apply our own standing rules. See note 22, supra.

This conclusion is consistent with our previous decisions on mootness in the class action context. In those cases, we recognized that class claims should not be rendered moot where the defendant voluntarily stopped the complained of conduct as to the named plaintiff but not necessarily to the broader putative class. See Cantell v. Commissioner of Correction, 475 Mass. 745, 753, 756, 60 N.E.3d 1149 (2016) ; Gonzalez v. Commissioner of Correction, 407 Mass. 448, 452, 553 N.E.2d 1295 (1990) ; Wolf v. Commissioner of Pub. Welfare, 367 Mass. 293, 298, 327 N.E.2d 885 (1975).