NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-482

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 360651

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff (Doe) appeals from a Superior Court judgment upholding his classification as a level two sex offender. Doe argues (1) that the classification decision was arbitrary and capricious, and not supported by substantial evidence, (2) that the Sex Offender Registry Board (SORB) hearing examiner used regulatory factor 37 (other information related to the nature of sexual behavior) to, in effect, apply factor 2 (repetitive and compulsive behavior) in an impermissible manner, see 803 Code Mass. Regs. § 1.33(2), (37) (2016), and (3) that his privacy and liberty interests outweigh the public's interest in Internet publication of his information. We affirm.

Background. Doe was classified as a level three sex offender in 2012 and, after a rehearing, again in 2017. In March of 2021, Doe sought reclassification under 803 Code Mass.

Regs. § 1.31 (2016).  A SORB hearing examiner held a hearing in September of 2021 and, the following month, issued a decision reducing Doe's classification to a level two.  We summarize the facts as found, and relied on, by the hearing examiner.

Doe was convicted of sexual assault (second degree) in Connecticut in 1992,[1] for assaulting his stepdaughter when she was (approximately) between the ages of five and seven.  The assaults occurred on multiple occasions; among other things, Doe digitally penetrated his stepdaughter's vagina and twice threatened her with violence -- once with a knife and once with a handgun.  In 1993, Doe was convicted of a sex offense against a different victim in Connecticut -- assault (fourth degree).[2] The conviction stemmed from Doe flicking a five year old boy's penis.  Doe was accused of other sexual offenses between 1991 and 2016, but the hearing examiner did not consider those as additional instances of "sexual misconduct," mainly due to a lack of evidence concerning those events.

Doe's criminal history extends beyond sexual offenses and includes a history of violent behavior spanning from 1979 to 2017.  For example, in 2005, Doe was convicted of assault for repeatedly punching his wife in the face.  More recently, two

_____

[1] The hearing examiner found this was the "like offense" in Massachusetts of rape and abuse of a child.
[2] According to the hearing examiner, the "like" Massachusetts sex offense of indecent assault and battery on a child.

2

women obtained abuse prevention orders against Doe (in 2013 and 2016); each averred that Doe physically assaulted them in conjunction with their refusing to engage in sexual activity.[3] And in 2017, Doe was charged with attacking his roommate with a knife and then an axe. Doe also has a history of substance abuse, including several substance-related charges and incidents between 1980 and 2020. Doe's substance abuse persisted despite past participation in addiction treatment.

Applying the factors in 803 Code Mass. Regs. § 1.33, the hearing examiner found that Doe posed a moderate risk of reoffense and a moderate degree of dangerousness. As to Doe's risk of reoffense, the hearing examiner cited that Doe offended against children (factor 3), one of whom was intrafamilial (factor 7) and another male (factor 17). She also considered Doe's substance abuse (factor 9), violent criminal history and abuse prevention orders (factors 10, 11, and 15), and that Doe violated community supervision while on probation for his sex offenses (factor 13). In mitigation, the hearing examiner considered, among other things, that as of the 2021 hearing Doe was sixty years old (factor 30) and had not committed a

---

[3] We note the hearing examiner also declined to treat these allegations as instances of "sexual misconduct," although she likely could have. See Doe, Sex Offender Registry Bd. No. 356011 v. Sex Offender Registry Bd., 88 Mass. App. Ct. 73, 79 (2015) ("examiner may consider . . . uncharged conduct").

qualifying sex offense in the nine years since his release from prison (factor 29).

Regarding Doe's dangerousness, the hearing examiner cited that Doe's victims were extravulnerable children (factors 3, 18, and 22) of different genders and relationship categories (factor 21); the high-contact and violent nature of some of Doe's offenses (factors 8 and 19); and Doe's criminal history. The hearing examiner also found it "concerning" that Doe "repetitive[ly] . . . assault[ed]" his stepdaughter "and then sexually assault[ed]" a five year old boy, and considered that as "other information related to the nature of sexual behavior" (factor 37) in assessing Doe's dangerousness. Finally, the hearing examiner concluded that Internet publication of Doe's information was warranted to "prevent young boys and girls and adult women known to [Doe] . . . from becoming [v]ictims of sex offenses."

Doe sought review of his classification under G. L. c. 30A, § 14, and G. L. c. 6, § 178M. Doe's motion for judgment on the pleadings was denied, and the level two classification was affirmed. Doe now appeals.

Discussion. Doe raises three arguments seeking to overturn his level two classification. The law and procedure applicable to SORB proceedings is discussed in depth in Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender Registry Bd., 482 Mass.

4

643, 645-646 (2019) (Doe No. 496501).  Our review is limited to determining whether the hearing examiner's decision is "unsupported by substantial evidence or is arbitrary or capricious, an abuse of discretion, or not in accordance with law."  Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 633 (2011).

1.  Arbitrary and capricious and substantial evidence.  Doe first contends that the hearing examiner's decision was arbitrary and capricious, and not supported by substantial evidence, because the hearing examiner applied an impermissible "checklist" approach and "failed to explain who Doe may offend against and why, at present, Doe is a 'moderate' [risk] of [re]offending."  We discern no error.

The examiner's thoughtful and detailed decision discusses and applies several regulatory risk factors indicative of an increased risk of reoffense.  Doe offended against two child victims (factors 3 and 22), one of whom was an intrafamilial female and the other an extrafamilial male (factors 7, 17, and 21); he violated community supervision while on probation for those offenses (factor 13); and he has a lengthy (and recent) history of violent criminal behavior (factors 10 and 11), substance abuse (factor 9), and hostility toward women (factor 15).

5

Doe does not argue that the hearing examiner erred in applying those factors, but instead seems to challenge how the hearing examiner weighed them given that Doe's index sex offenses where somewhat dated -- from 1992 and 1993. It is clear, however, that the hearing examiner's analysis of the pertinent risk-mitigating factors, including that Doe had not committed a qualifying sex offense in nine years,[4] is what drove her conclusion that Doe posed only a moderate, rather than a high, risk of reoffense. Despite the dated nature of Doe's sex offenses, substantial evidence showed that Doe's criminal behaviors and substance abuse persisted in the years immediately prior to his 2021 hearing, and thus supported the hearing examiner's determination that, as of that date, Doe posed a moderate risk of reoffense. See, e.g., 803 Code Mass. Regs. § 1.33(10)(a) ("Ongoing criminal behavior weighs heavily in the application of factor 10"). We are therefore satisfied that the hearing examiner engaged in "a sound exercise of informed

---

[4] To the extent Doe argues that the hearing examiner erred in the weight she afforded to factor 29 (offense-free time in the community), we disagree. The hearing examiner did not afford Doe the full mitigating weight of that factor because he had not remained sex offense free in the community for ten years, having been released from prison only nine years prior to his hearing. See 803 Code Mass. Regs. § 1.33(29) ("risk of reoffense lowers substantially after ten years"). That decision was within the hearing examiner's discretion. See Doe, Sex Offender Registry Bd. No. 23656 v. Sex Offender Registry Bd., 483 Mass. 131, 138-139 (2019).

6

discretion rather than the mechanical application of a checklist."  Doe, Sex Offender Registry Bd. No. 136652 v. Sex Offender Registry Bd., 81 Mass. App. Ct. 639, 651 (2012).

Nor do we agree that the hearing examiner's analysis was wanting as to Doe's degree of dangerousness.  Doe contends that the hearing examiner failed to provide a "detailed analysis of the predicted future acts that Doe is likely to engage in."  But the hearing examiner considered that Doe had committed contact offenses against "two five-year-old prepubescent extravulnerable children," and that those contact offenses had been repeated, and accompanied by threats of violence.  She also considered Doe's substantial and ongoing criminal history.  This satisfied the case law's command to "consider 'the severity and extent of the harm the offender would present to the public in the event of reoffense'" (citation omitted).  See Doe No. 496501, 482 Mass. at 659.  See also id. at 651 ("because past is prologue, a hearing examiner would make [the dangerousness] determination based on the sexual crime or crimes that the offender committed in the past").[5]  At bottom, "the factors present were sufficient to support a determination that Doe's degree of dangerousness

_____

[5] We also note that the hearing examiner identified Doe's likely victim pool as "young boys and girls and adult women known to [Doe]," albeit in a separate section of her analysis.  That conclusion is supported by the record evidence of Doe's predicate sexual offenses and more recent history of hostility toward women.  See Doe No. 496501, 482 Mass. at 651.

7

was 'moderate.'"  Doe, Sex Offender Registry Bd. No. 23656 v. Sex Offender Registry Bd., 483 Mass. 131, 145 (2019) (Doe No. 23656).

2.  Factor thirty-seven.  Doe next argues that the hearing examiner erred when she considered, in connection with Doe's degree of dangerousness, the facts that Doe "repetitive[ly] sexual[ly] assault[ed] . . . [his stepdaughter (Victim 1)] and then sexually assault[ed] [a five-year old boy (Victim 2)]" (emphasis added).  Doe argues that this analysis, which was made under factor 37 (other information related to the nature of sexual behavior), in essence misapplied factor 2 (repetitive and compulsive behavior) through the "back door," because factor 2 cannot be applied where, as here, an offender is not confronted between offenses.

To consider Doe's argument we have to start with what factor 2 actually says, and compare it to what the hearing examiner actually said.  Factor 2 reads, in relevant part:

> "Repetitive and compulsive behavior is associated with a high risk of reoffense.  Factor 2 is applied when a sex offender engages in two or more separate episodes of sexual misconduct.  To be considered separate episodes there must be time or opportunity, between the episodes, for the offender to reflect on the wrongfulness of his conduct" (emphasis added).

803 Code Mass. Regs. § 1.33(2)(a).  Factor 2 thus considers repetitive and compulsive behavior as predictive of an offender's risk of reoffense.  Here, the hearing examiner did

8

not cite factor 2 in her decision, but did refer to some of Doe's conduct as "repetitive." However, the hearing examiner's reference to Doe's "repetitive" assaults had to do with his degree of dangerousness, not with his risk of reoffense. Specifically, she said:

> "[Doe] sexually assaulted Victim 1 on multiple occasions beginning at age [five]. While living with a woman and her four children, [Doe] also sexually assaulted Victim 2. I find [Doe's] repetitive sexual assaults of Victim 1 and then sexually assaulting [Victim 2] concerning and consider it as to [Doe's] degree of dangerousness" (emphasis added).

Relying solely on a Superior Court decision addressing the legality of factor 2, Doe argues that the hearing examiner's consideration of Doe's repeat offenses in this manner was impermissible. See Doe, Sex Offender Registry Bd. No. 22188 vs. Sex Offender Registry Bd., Mass. Super. Ct., No. 201130B, slip op. (Middlesex County Apr. 16, 2021) (Doe No. 22188 I). In that case, supra at 26, a Superior Court judge declared that:

> "The second and third sentences of [factor 2] unlawfully exceed [SORB's] authority and violate due process by attributing a high risk of reoffense whenever an offender committed two or more episodes of sexual misconduct, whether or not the offender was discovered, confronted or investigated between episodes" (emphasis added).

The judge reasoned that factor 2 violated due process, primarily because the empirical evidence did not "support the notion that repeated sex offenses, without apprehension, tend to show compulsion or any increased risk of sexual recidivism" (emphasis added). See id. at 16. SORB has not challenged this decision,

9

and has acknowledged that factor 2 should not be considered to show an increased risk of reoffense where a perpetrator is not "discovered, confronted, or investigated" between sexual assaults.  Doe, Sex Offender Registry Bd. No. 22188 v. Sex Offender Registry Bd., 101 Mass. App. Ct. 797, 804 (2022) (Doe No. 22188 II).

As noted, here the hearing examiner did not consider Doe's repeat offenses in analyzing his risk of reoffense, but only his degree of dangerousness.  Doe's reliance on the Superior Court's reasoning in Doe No. 22188 I is therefore misplaced.  Moreover, the hearing examiner's consideration of Doe's repeat offenses in assessing his potential for future dangerousness was, in our view, reasonable.  Such a consideration is supported by the SORB statute itself, which permits SORB to consider "the number, date and nature of prior offenses" "in determining . . . degree of dangerousness" (emphasis added).  G. L. c. 6, § 178K (1) (b) (iii).  The Supreme Judicial Court has recognized that the dangerousness "determination naturally takes place on a continuum," and on that continuum, for example, "contact offenders are generally more dangerous than noncontact offenders."  Doe No. 496501, 482 Mass. at 659.  It is reasonable for SORB also to consider repeat contact offenders, such as Doe, as falling on the "generally more dangerous" side of that continuum.  Furthermore, in other contexts courts have

10

historically assessed an individual's dangerousness based, in part, on whether an individual is a repeat offender. Similar analyses occur at dangerousness hearings, G. L. c. 276, § 58A (5) (judge shall take into account, inter alia, "record of convictions" and history of prior abuse prevention orders); in sentencing, Massachusetts Sentencing Commission, Advisory Sentencing Guidelines 39-43 (2017); and in deciding whether to stay a sentence pending appeal, Commonwealth v. Hodge, 380 Mass. 851, 855 (1980). We are accordingly confident that the hearing examiner's application of factor 37 was not "arbitrary or capricious, an abuse of discretion," a means to thwart the limitation of factor 2, or contrary to the law. See Doe No. 22188 II, 101 Mass. App. Ct. at 804.

3. Internet publication. Doe next suggests that reversal is warranted because his "liberty and privacy interest[s] outweigh the public's interest in" Internet publication of Doe's biographical information. Once again, we disagree. The hearing examiner explicitly found that publication of Doe's information would serve public safety by "prevent[ing] young boys and girls and adult women known to [Doe] . . . from becoming [v]ictims of sex offenses." Such a decision was supported by substantial evidence and was in accord with the case law. See Doe No. 496501, 482 Mass. at 655 ("Internet publication . . . almost invariably serve[s] a public safety interest" where "sexually

11

violent offender presents a moderate risk to reoffend and a moderate degree of dangerousness").

Judgment affirmed.

By the Court (Henry,
  Desmond & Englander, JJ.[6]),

*Joseph F. Stanton*

Clerk

Entered:  August 3, 2023.

---

[6] The panelists are listed in order of seniority.