GARNET CONSTRUCTION COMPANY, INC. *vs.* ACADIA
INSURANCE COMPANY.

No. 03-P-155.

Middlesex. February 11, 2004. - August 26, 2004.

Present: DOERFER, COHEN, & MILLS, JJ.

*Insurance,* General liability insurance, Insurer's obligation to defend, Construction of policy. *Contract,* Insurance, Indemnity. *Indemnity.*

A Superior Court judge properly ruled that the plaintiff, a subcontractor at a construction site, was not entitled to a declaratory judgment that the defendant, which issued both workers' compensation and commercial general liability insurance policies to the plaintiff, had a duty to defend the plaintiff in an action brought by its contractor, where the claims alleged in the contractor's complaint did not fall within the "insured contract" exception to the employers' liability exclusion. [706-710]

CIVIL ACTION commenced in the Superior Court Department on June 4, 2001.

The case was heard by *Peter M. Lauriat,* J., on motions for summary judgment.

*Richard F. Wholley* for the plaintiff.

*Peter E. Heppner* for the defendant.

COHEN, J. In this insurance coverage case, Garnet Construction Company, Inc. (Garnet), appeals from the disposition of the parties' cross motions for summary judgment. At issue is whether Garnet is entitled to a declaratory judgment that Acadia Insurance Company (Acadia), which issued both workers' compensation and commercial general liability insurance policies to Garnet, had a duty to defend Garnet in an action brought by The Woodworks Architectural and Millwork, Inc. (Woodworks).[1] The motion judge ruled that Acadia did not have a duty to defend and, accordingly, entered judgment for Acadia.

---

[1] On the assumption that Acadia had a duty to defend, Garnet also claimed damages for breach of contract and violation of G. L. c. 93A.

The underlying claims brought by Woodworks against Garnet arose from a construction site accident in which Robert Drover, a Garnet employee, was injured. Drover received benefits under Garnet's workers' compensation policy and also brought a suit for damages, under the authority of G. L. c. 152, § 15, against the general contractor, Shawmut Design and Construction Company, Inc. (Shawmut). In that suit, Shawmut filed a third-party complaint against Woodworks, one of its subcontractors, seeking express contractual indemnification, as well as damages for Woodworks' alleged failure to name Shawmut as an additional insured under Wordworks' liability insurance policy. Woodworks, in turn, brought a fourth-party complaint against Garnet, its installation subcontractor.

As originally filed, the fourth-party complaint alleged that Garnet was liable for contribution as a joint tortfeasor under G. L. c. 231B and for tort-based (common-law) indemnity on the theory that any liability of Woodworks was only derivative or vicarious of Garnet's wrongful acts. Later, Woodworks amended its fourth-party complaint to include a claim for "implied contractual indemnity," alleging that "[t]he relationship between the parties is such" that Garnet "has an implied agreement to indemnify" Woodworks. Garnet requested that Acadia provide it with a defense to the fourth-party action under either its workers' compensation policy or its commercial general liability policy. Acadia denied coverage under both insurance contracts, and this action ensued.

On appeal, Garnet no longer presses its contention that Acadia owed it a duty to defend under the workers' compensation policy — a position that is at odds with the Supreme Judicial Court's decision in *HDH Corp.* v. *Atlantic Charter Ins. Co.*, 425 Mass. 433, 436-437 (1997). We are asked to consider only whether Acadia was required to defend the fourth-party action under the terms of the commercial general liability policy issued to Garnet.

There is no dispute that Woodworks' claims against Garnet were of questionable merit. See *Liberty Mut. Ins. Co.* v. *Westerlind,* 374 Mass. 524, 526-527 (1978); *Larkin* v. *Ralph O. Porter, Inc.*, 405 Mass. 179, 182 & n.3 (1989); *Fall River Hous. Authy.* v. *H. V. Collins Co.*, 414 Mass. 10, 14-15 (1992). Nevertheless,

Acadia's duty to defend extended even to dubious claims. See *Wolov* v. *Michaud Bus Lines, Inc.*, 21 Mass. App. Ct. 60, 65 (1985). Irrespective of the weakness of the underlying complaint, an insurer must undertake to defend its insured "if the allegations are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms." *Sterilite Corp.* v. *Continental Casualty Co.*, 17 Mass. App. Ct. 316, 318 (1983), quoting from *Vappi & Co.* v. *Aetna Cas. & Sur. Co.*, 348 Mass. 427, 431 (1965). We therefore examine the claims asserted in the amended fourth-party complaint with reference to the relevant portions of the policy.

The pivotal policy provision is the employer's liability "Exclusions," which reads as follows:

"This insurance does not apply to:

. . .

"e. Employer's Liability

'Bodily injury' to:

(1) An 'employee' of the insured arising out of and in the course of:

    (a) Employment by the insured; or

    (b) Performing duties related to the conduct of the insured's business;

"This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

"This exclusion does not apply to liability assumed by the insured under an *'insured contract'* " (emphasis supplied).

The term "insured contract" is defined in the policy in relevant part to mean:

"That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement."[2]

Garnet does not dispute that, because Drover was its employee, the employer's liability exclusion is applicable, and Acadia would be obliged to defend only if the fourth-party complaint could be said to raise a claim of liability assumed under an "insured contract," thereby triggering the exception to the exclusion. Garnet also does not dispute that Woodworks' claims for contribution and tort-based indemnity do not fall within the exception. It points only to Woodworks' claim for implied contractual indemnity, emphasizing that the definition of "insured contract" does not, on its face, require that the insured's assumption of another's tort liability be express or in writing. Acadia, on the other hand, argues that the definition of "insured contract" requires that the insured's indemnity obligation be expressly assumed in the parties' contract and not simply implied from the parties' relationship. According to Acadia, any broader reading of the exception to the exclusion would conflict with the "manifest design of the policy" to exclude claims arising from injuries to the insured's employees except in extremely limited circumstances.

We think that the policy language unambiguously supports Acadia's interpretation. As defined, an "insured contract" must be *"part of"* another contract or agreement pertaining to the insured's business — in other words, it must be a term of the business arrangements between the parties. Furthermore, pursu-

---

[2]This definition also plays a role in determining the scope of the policy's coverage for contractual liability. Absent a contractual liability endorsement, the policy's "Contractual Liability" exclusion precludes coverage for " 'Bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." Again, however, there is an exception for "insured contracts." The exclusion does not apply to liability for damages "[a]ssumed in a contract or agreement that is an 'insured contract', provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement."

ant to this contract term, the insured must *"assume* the tort liability of another" — that is, it must affirmatively undertake an indemnity obligation to the other party. See *Truck Ins. Exchange* v. *BRE Properties, Inc.*, 119 Wash. App. 582, 592-596 (2003) (applying "insured contract" exception where general contractor's tort liability for injury suffered by third party was expressly transferred by agreement to insured subcontractor). Even if we accept that the policy does not require the contract to be in writing, the parties nevertheless had to reach an explicit agreement that the insured would hold the other party harmless for its tort liability. See *John Deere Ins. Co.* v. *De Smet Ins. Co. of South Dakota*, 650 N.W.2d 601, 606-607 (Iowa 2002) (exception applied based upon express oral agreement to indemnify). See also *Sanders* v. *Ashland Oil, Inc.*, 656 So. 2d 643, 649-650 (La. App. 1995) (exception not applied where written contract provided for indemnification only in the context of a performance bond and not expressly for tort liability).

Here, the fourth-party complaint did not assert a claim based upon any explicit term in the contract between Woodworks and Garnet; nor did it assert that Garnet affirmatively undertook to indemnify Woodworks. Instead, it alleged an implied indemnity obligation derived solely from the parties' relationship as contractor and subcontractor. Indeed, Garnet itself characterized the amended fourth-party complaint in this fashion when it tendered its defense to Acadia. In two letters that are attached as exhibits to its complaint for declaratory judgment, Garnet acknowledged and emphasized that Woodworks' implied contractual indemnity claim was *not* contractually based, stating that "the alleged implied liability arises from the purported relationship of the parties, and not based on any purported liability assumed under a contract" and that, "[a]s you know, the relationship between Woodworks and Garnet was that of contractor and subcontractor. It is that relationship and not a claim based on breach of any contract, that forms the basis of Woodworks' implied indemnity claim against your insured."[3]

Later, Garnet took a different tack, arguing before the motion

---

[3]Garnet took this position in support of its now-abandoned claim for coverage under its workers' compensation policy, which contained a broadly worded contractual liability exclusion with no exception for an "insured contract."

judge that the amended fourth-party complaint could be interpreted as raising an express contractual indemnity claim. In making that argument, Garnet noted that there was a provision in the written contract between it and Woodworks whereby Garnet agreed to "[g]eneral conditions of building and owners' requirements." Garnet argued that this clause, when read together with the contract between the owner and the general contractor, constituted an express agreement to indemnify Woodworks.

This argument does not appear to be pressed on appeal[4]; but even if we were to consider it, we agree with the motion judge that the language in the subcontract is not sufficiently explicit to incorporate any indemnification provision contained in the contract between the owner and the general contractor and that, therefore, there was no express contract of indemnity between Garnet and Woodworks. Compare *Whittle* v. *Pagani Bros. Constr. Co.*, 383 Mass. 796, 799 (1981). In any event, the allegations of the amended fourth-party complaint are not susceptible of the interpretation that Woodworks' claim was one for express contractual indemnity.

In short, because the claims alleged in Woodworks' complaint did not fall within the "insured contract" exception to the employers' liability exclusion, the allowance of Acadia's motion for summary judgment and the denial of Garnet's cross motion for summary judgment was correct. The declaratory judgment ordering and declaring that Acadia owed no duty to defend Garnet under its commercial liability policy is affirmed.

*So ordered.*

---

[4]The various contract provisions are quoted in Garnet's statement of facts, but the brief contains no substantive argument on the issue. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).