## RCS Group, Inc. *vs.* Lamonica Construction Co., Inc.

No. 08-P-1111.

Norfolk. May 4, 2009. – October 30, 2009.

Present: Cypher, Vuono, & Milkey, JJ.

*Contract,* Performance and breach. *Jurisdiction. Insurance,* Liability insurance, Insured, Workers' compensation insurance. *Indemnity.*

The defendant in a civil action failed to demonstrate that the Superior Court lacked jurisdiction to hear a certain breach of contract claim. [617-618]

In third-party litigation between a construction company (defendant) whose employee was injured on a job site run by the general contractor (plaintiff), regarding the parties' respective obligations to defend the litigation brought by the employee and to fund the settlement that was reached, the Superior Court judge, in granting summary judgment in favor of the plaintiff, erred in concluding that the defendant had committed a breach of a contractual duty to buy liability insurance that included the plaintiff as an additional insured, where the contract in question did not state, either expressly or by implication, that the defendant had such a duty [618-621]; further, in the absence of such a duty, the judge erred in dismissing the defendant's counterclaims seeking reimbursement from the plaintiff of at least a portion of the settlement [621-622].

Civil action commenced in the Superior Court Department on November 20, 1998.

Following review in this court, 65 Mass. App. Ct. 1123 (2006), motions for summary judgment were heard by *Patrick F. Brady,* J.; a motion for assessment of damages was heard by *Thomas A. Connors,* J.; and entry of judgment was ordered by *E. Susan Garsh,* J.

*Brian McMenimen* for the plaintiff.

*Marielise Kelly* for the defendant.

Milkey, J. In 1998, an employee of Lamonica Construction Co., Inc. (Lamonica), was severely injured when he fell from a warehouse roof at a job site in Fairhaven. The employee pursued workers' compensation remedies from Lamonica, and he filed a

negligence action against RCS Group, Inc. (RCS Group), the roofing company that served as general contractor at the site. The employee long ago settled his various claims against these parties and others, with payment provided by Lamonica's liability insurer. The appeal before us involves third-party litigation between RCS Group and Lamonica regarding their respective obligations to defend the litigation that the employee brought and to fund the settlement that was reached.

This is the parties' second appeal on these issues. In the first round of litigation, the Superior Court entered judgment that Lamonica was liable to defend and indemnify RCS Group based on an express indemnification provision in the parties' subcontract. In an unpublished order issued pursuant to Appeals Court rule 1:28, we reversed that judgment after concluding that the indemnification provision violated G. L. c. 149, § 29C.[1] *MacFarland* v. *RCS Group, Inc.*, 65 Mass. App. Ct. 1123 (2006). On remand, RCS Group again prevailed on summary judgment, this time based on the company's alternative argument that Lamonica had breached a contractual duty to buy liability insurance that included RCS Group as an additional insured. The judge also ruled in favor of RCS Group on counterclaims by which Lamonica sought reimbursement from RCS Group for the settlement with its employee.

On appeal, Lamonica argues that the lower court had no jurisdiction to hear the contract claim and challenges the merits of the ruling on multiple grounds. On cross appeal, RCS Group challenges a different Superior Court judge's refusal to award it damages for Lamonica's contract breach.

We reject Lamonica's jurisdictional argument, but we agree that the judge below erred in concluding that Lamonica had a contractual obligation to name RCS Group as an additional insured. We therefore reverse and remand.

*Background. The arrangement between the parties.* In 1998, a manufacturer named Nye Lubricants, Inc. (Nye Lubricants), hired RCS Group to replace a roof on a dilapidated warehouse in Fairhaven. RCS Group in turn subcontracted the job to La-

---

[1]That statute, which is discussed further in this opinion, voids certain types of indemnification agreements between general contractors and their subcontractors.

monica through a written contract supplied by RCS Group.[2] Paragraph 5 of that contract contained two key provisions. Subparagraph 5(a) required Lamonica "to defend, indemnify and hold harmless" RCS Group from various stated damages and claims. Subparagraph 5(b) required Lamonica to purchase "such insurance as will protect it and [RCS Group]" from various claims. It is uncontested both that Lamonica purchased a $1 million liability policy in its own name and that this policy did not include RCS Group as an additional insured. An employee of Lamonica was severely injured when he fell headfirst from the roof onto the concrete below while working on the job.

*The litigation over the indemnification provision.* Faced with a negligence action filed by the injured employee, RCS Group filed a third-party complaint against Lamonica. Count I of that complaint alleged that Lamonica was liable to indemnify RCS Group under the express indemnification provision set forth in subparagraph 5(a) of the subcontract. The complaint also alleged common-law indemnification (count II), contribution (count III), and breach of contract (count IV). On April 18, 2002, a Superior Court judge allowed RCS Group's motion for summary judgment on count I. The judge also ruled against Lamonica on a fourth-party complaint it had brought against Nye Lubricant. Lamonica's efforts to seek interlocutory review of these rulings were unsuccessful.

At this point, Lamonica faced the prospect of having to indemnify RCS Group for any tort damages owed to the employee, even though Lamonica itself faced no direct tort liability.[3] In this context, Lamonica settled the employee's claims against all the various parties in a $900,000 agreement. That settlement was funded by the $1 million liability policy that Lamonica had purchased in its own name. A different Superior Court judge approved the settlement on September 30, 2002, leaving the remaining parties to contest their claims against each other.

[2]The exact provenance of the contractual language is not clear on the record, but counsel for RCS Group expressly acknowledged at oral argument that it was reasonable for the court to assume that his client, as the general contractor, "was going to dictate the terms of the contract" and that it "procured the contract."

[3]The workers' compensation statute provided the employee his sole remedy as against Lamonica. See G. L. c. 152, § 23; *Spellman* v. *Shawmut Woodworking & Supply, Inc.*, 445 Mass. 675, 679 (2006).

The parties then sought to reduce the two summary judgment rulings to final judgment without pressing for a ruling on RCS Group's remaining third-party claims. The record reflects that the parties eventually agreed on the specific form for accomplishing this goal after extensive negotiations and consultation with a court clerk. On July 22, 2004, the court adopted their proposal, which included — in addition to a stipulation of dismissal that formally terminated the employee's settled claims — three separate partial "judgments." Under this fractured resolution, the first partial judgment granted the relief that RCS Group was seeking through its third-party complaint (indemnification and reimbursement of its attorney's fees), the second dismissed Lamonica's fourth-party complaint against Nye Lubricants, and the third dismissed with prejudice "all other claims, counterclaims, and crossclaims."

Lamonica successfully appealed the first partial judgment.[4] In an order issued pursuant to rule 1:28, we reversed the grant of summary judgment in favor of RCS Group after concluding that the indemnification provision included in subparagraph 5(a) of the contract violated G. L. c. 149, § 29C, because it effectively required Lamonica to indemnify RCS Group even where Lamonica was not at fault. *MacFarland* v. *RCS Group, Inc.*, 65 Mass. App. Ct. 1123 (2006).

*The Superior Court proceedings on remand.* Having prevailed on appeal, Lamonica requested and received permission to file counterclaims seeking reimbursement from RCS Group toward the settlement that Lamonica reached with its employee (including settlement of the claims the employee had filed against RCS Group). Meanwhile, on October 2, 2006, Lamonica's insurer, Arbella Protection Insurance Co. (Arbella), filed a separate litigation against RCS Group's insurer, First Financial Insurance Co. (First Financial), also seeking funding toward the settlement.[5]

---

[4]Lamonica unsuccessfully appealed the second partial judgment, which related to the fourth-party complaint brought against Nye Lubricant. That judgment is not at issue here.

[5]Arbella Protection Ins. Co. *vs.* First Financial Ins. Co., Inc., Norfolk Superior Court, No. CV06-01686. At one point, Lamonica made a passing suggestion that the Superior Court join the two cases and "dispose of these interrelated actions simultaneously." The record does not reflect whether the court ever seriously entertained this suggestion. Counsel reported at oral argument that the case between the two insurers had effectively been put on hold pending the outcome of this appeal.

The parties filed and served cross motions for summary judgment, with RCS Group pressing its third-party claims against Lamonica that had not yet been ruled upon, and Lamonica pressing its counterclaims. In a memorandum dated December 16, 2006, the motion judge (the same judge who approved the settlement with Lamonica's employee) ruled in RCS Group's favor as to Lamonica's counterclaims. The judge also ruled in RCS Group's favor on count IV of the third-party complaint, concluding that Lamonica had breached a duty, based on subparagraph 5(b) of the subcontract, to buy liability insurance that named RCS Group as an additional insured.[6] The issue of damages was left for further hearing.

When it moved for an assessment of damages, RCS Group argued that it was entitled to damages in addition to its right to receive the benefit of Lamonica's having settled the employee's claim. Specifically, RCS Group argued that it was entitled to all of its attorney's fees, which totaled $110,401.96.[7] The judge, a different judge than the one who heard the summary judgment motions, accepted Lamonica's argument that RCS Group itself had suffered no harm from Lamonica's breach and denied the motion for assessment of damages. Eventually, final judgment was entered incorporating the various rulings.

*Discussion. Jurisdiction.* We must first resolve whether RCS Group's breach of contract claim is properly before us. Lamonica contends that this claim was dismissed with prejudice pursuant to a "judgment of dismissal" entered on July 22, 2004 (the third of the three partial judgments entered that day).[8] Because that judgment was never appealed, Lamonica argues

---

[6]The judge also rejected Lamonica's argument that subparagraph 5(b) itself violated G. L. c. 149, § 29C. The judge ruled in Lamonica's favor on counts II and III of the third-party complaint, and those claims are not at issue on appeal.

[7]RCS Group claimed it was entitled to all fees, regardless of whether those fees were incurred in defending the employee's claim or in litigating the third-party claims and counterclaims, and regardless of the degree of success it enjoyed in litigating any particular claim.

[8]The entry of three partial judgments caused great and unnecessary confusion. This case presents another textbook example of why there should always be only one final judgment in a civil case, absent a certification pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974). See *Jones* v. *Boykan*, 74 Mass. App. Ct. 213, 218 n.9 (2009).

that this claim was not subject to, and therefore could not have been revived by, this court's 2006 rescript.[9]

Lamonica's premise that the breach of contract claim was subject to the judgment of dismissal is untenable. By its express terms, this judgment applied to "all *other* claims, counterclaims, and crossclaims" (emphasis added). Read in context, the term "other" was obviously intended to refer to claims "other" than those covered by the two other partial judgments. Thus, the claims subject to the judgment of dismissal included only those claims that were not set forth in RCS Group's third-party complaint (the subject of the first partial judgment) or in Lamonica's fourth-party complaint (the subject of the second partial judgment).[10] The breach of contract claim was part of RCS Group's third-party complaint and hence is covered by the judgment on the third-party complaint.[11] That judgment was reversed by this court and remanded to the Superior Court for further proceedings. On remand, the judge was free to entertain RCS Group's alternative theories of liability — theories the court had no cause to resolve in the first round of litigation. Cf. *McCrea* v. *Flaherty*, 71 Mass App. Ct. 637, 646-647 (2008) (recognizing ability of parties to move for full summary judgment "premised on a theory which, if successful, would have rendered moot the remaining issues"). In any event, Lamonica has argued only that RCS Group overtly dismissed its alternative theories, not that it waived them by failing to press them in a timely manner.

*Breach of contract.* The next question is whether the judge below erred in concluding that Lamonica breached its subcontract

[9]Lamonica raised its jurisdictional argument below, but only by way of a motion for reconsideration after the judge ruled in RCS Group's favor. Because we conclude that Lamonica's argument fails on the merits, we need not consider whether the Superior Court judge was correct in rejecting the argument because it was untimely.

[10]The claims subject to the third partial judgment included, at a minimum, those that Nye Lubricants brought against Lamonica in response to Lamonica's fourth-party complaint (variously referenced on the docket as "counterclaims" and "cross-claims").

[11]As evidenced by its caption, the first partial judgment covered RCS Group's third-party complaint without qualification. The fact that this "judgment" was presumably based on count I (since that was the only ground on which RCS Group had focused in its summary judgment brief) is beside the point. Indeed, had the rules been followed, there would have been a single final judgment applicable to the entire case.

with RCS Group. It is uncontested that Lamonica did not name RCS Group as an additional insured on its own liability policy, and no one contends that RCS Group was otherwise a party directly covered by that policy.[12] Therefore, whether a breach occurred turns on whether the subcontract between the parties required Lamonica to purchase liability insurance that directly covered RCS Group, or whether the subcontract permitted Lamonica to satisfy its contractual obligations with insurance covering its own liabilities, in the process "protecting" RCS from the listed claims. This is a question of law subject to de novo review. See *Lumber Mut. Ins. Co.* v. *Zoltek Corp.*, 419 Mass. 704, 707 (1995).

As an initial matter, we note that the subcontract does not expressly state that Lamonica had a duty to name RCS Group as an additional insured (or otherwise to provide it direct coverage). We must therefore determine whether the language that does appear in the contract implies such a duty.

The operative sentence of the contract reads as follows:

> "[Lamonica] shall maintain, at its own cost, such insurance as will protect it and [RCS Group] from (i) claims under the [w]orkmen's [c]ompensation [l]aw of the State in which the [w]ork is being performed, and (ii) any claim for bodily injury, including death, and whether such [w]ork or performance are by [Lamonica] or any of [its] subcontractors or anyone directly or indirectly employed by [it], said insurance to be in the limits as set forth in the [c]ontract [d]ocuments."

The key language is "as will protect." In ordinary usage, "protect" means to shield a person or thing from adverse harm.[13] RCS Group argues that an insurance policy cannot "protect" someone unless it provides that person with direct coverage

---

[12]Although the parties and the judge below focused on the fact that Lamonica did not specifically name RCS Group as an additional insured, coverage can be afforded to third parties through other means as well. See 9 Couch, Insurance § 126:7 (3d ed. 1997) (discussing blanket additional insured endorsements as an alternative to expressly identifying additional parties). For purposes of this appeal, these distinctions are not material.

[13]See Webster's Third New Intl. Dictionary 1822 (1993 ed.) (defining "protect" as "to cover or shield from that which would injure, destroy, or detrimentally affect").

and, hence, that this language required Lamonica to buy a liability policy naming RCS Group as an additional insured.

Although we agree that RCS Group's reading is one possible interpretation of the phrase "as will protect," we conclude that it is not the only reasonable interpretation. The insurance provision quoted above directly follows the obligation that Lamonica indemnify RCS Group. See *Mejia* v. *American Cas. Co.*, 55 Mass. App. Ct. 461, 465 (2002) (specific contractual language should not be read in isolation but should be read in the context of the contract as a whole). Although that provision was eventually determined to be void, the parties presumably believed it to be valid when they signed the contract. See *Dickson* v. *Riverside Iron Works, Inc.*, 6 Mass. App. Ct. 53, 55 (1978) (to determine parties' intent, we examine circumstances surrounding making of contract as they existed at that time). Had the indemnification provision been valid, as the parties intended, then liability insurance purchased in Lamonica's own name would have "protected" RCS Group fully so long as it covered Lamonica's indemnification obligations (as the insurance contract purchased by Lamonica in fact did).[14] When examined in this context, the parties easily could have viewed the insurance policy that Lamonica purchased as one that would "protect" RCS Group, even though the policy did not include RCS Group as an additional insured.[15]

Based on this analysis, we conclude that subparagraph 5(b) is

---

[14]Under the commercial general liability policy that Lamonica purchased, there was an exclusion for contractual liability, but that exclusion did not apply to an "insured contract," which was defined to include "[t]hat part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." See *Garnet Constr. Co.* v. *Acadia Ins. Co.*, 61 Mass. App. Ct. 705, 707-709 (2004) (examining similar language).

[15]Our conclusion that one party's purchase of insurance in its own name can be said to satisfy a contractual obligation to purchase insurance "as will protect" another is reinforced by an examination of another aspect of the contract. The "as will protect" phrase in subparagraph 5(b) applies not only to Lamonica's duty to purchase a general liability policy, but also to its duty to purchase workers' compensation coverage. Under Massachusetts law, each employer is required to obtain its own workers' compensation policy unless it qualifies as a self-insurer. G. L. c. 152, § 25A. *Letteney's Case*, 429 Mass. 280, 285 (1999). When a subcontractor complies with this obligation and one of its employees is injured, the subcontractor's policy is used to pay the claim. In the event that a subcontractor fails to purchase its own policy, the general

ambiguous on the key issue in dispute. We read that ambiguity against the drafter of the contract, in this case RCS Group. See *Massachusetts Turnpike Authy.* v. *Perini Corp.*, 349 Mass. 448, 454 (1965).[16] Thus, we conclude that the contract did not require Lamonica to name RCS Group as an additional insured (or otherwise to provide RCS Group with direct coverage under its liability policy). The judge therefore erred in ruling that Lamonica had breached its contract, and the judgment must be reversed. We see no unfairness in this result given that RCS Group expressly could have required that Lamonica include it as an additional insured, as is commonly done. See 9 Couch, Insurance § 126:7 (3d ed. 1997) ("Contractors commonly require their subcontractors to carry liability insurance naming the contractor as an additional insured").

*Dismissal of Lamonica's counterclaim.* The only remaining issue that must be resolved involves the disposition of Lamonica's counterclaims by which Lamonica sought to have RCS Group reimburse all or part of the $900,000 settlement (which Arbella had funded).[17] Because we conclude that Lamonica had no duty to provide liability insurance that directly covered RCS Group, the subcontract does not stand as an obstacle to Lamonica seeking reimbursement of at least a portion of the $900,000 settlement from RCS Group.[18] Therefore, the judgment in favor of RCS Group on Lamonica's counterclaims was erroneous.[19]

We do not mean to suggest that such claims will necessarily

---

contractor faces liability under its policy. See G. L. c. 152, § 18. Thus, a workers' compensation policy purchased by a subcontractor "will protect" the general contractor from worker's compensation claims even though the general contractor need not — indeed, would not — be directly covered by the subcontractor's policy.

[16]Neither party pointed to the existence of any extrinsic evidence that might help resolve the ambiguity. Compare *Cardone* v. *Boston Regional Med. Center, Inc.*, 60 Mass. App. Ct. 179, 186-188 (2003) (question of fact exists where contract language is sufficiently ambiguous that the interpretation depends on disputed or undeveloped evidence).

[17]Based on this opinion, we do not reach the merits of Lamonica's alternative arguments or RCS Group's cross-appeal seeking damages.

[18]Had Lamonica breached a duty to name RCS Group as an additional insured, then Lamonica would not have had a viable claim to force RCS Group to reimburse it for a settlement that fell within the insurance coverage that Lamonica should have provided.

[19]The fact that Arbella, and not Lamonica, actually funded the settlement does not mean that the claims seeking reimbursement must be brought in the

succeed, and we note that Lamonica has not shown — on the record before us — that it is entitled to a judgment in its favor as a matter of law. We leave resolution of these issues to the remand and, as appropriate, to the separate litigation between the insurers.[20]

*Conclusion.* For the reasons set forth above, we reverse the judgment of the Superior Court and remand this case for further proceedings consistent with this opinion.

*So ordered.*

---

separate proceeding between the insurers. See Mass.R.Civ.P. 17(a), 365 Mass. 763 (1974) (allowing an insurer to "sue in the name of the assured to whose rights it is subrogated"). Moreover, RCS Group would be a proper defendant in such a reimbursement action regardless of whether First Financial has an obligation to defend and indemnify it (and regardless of whether Arbella might separately have a claim against First Financial in the separate proceeding).

[20]The separate litigation is not before us, and we therefore cannot assess the extent to which the two actions are congruent. We leave it to the Superior Court to decide whether the two actions should be consolidated.