SUPERIOR COURT 
 
 KIM LUZ, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED v. BAYADA HOME HEALTH CARE, INC.; DAVID BAIADA; AND MARK BAIADA

 
 Docket:
 2184CV01383-BLS2
 
 
 Dates:
 June 3, 2024
 
 
 Present:
 Kenneth W. Salinger
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 DECISION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND CLASS CERTIFICATION
 
 

 Kim Luz worked as a home health aide for BAYADA Home Health Care, Inc. (“Bayada”) for about two years. David Baiada is Chief Executive Officer of the company; Mark Baiada is chair of its board of trustees.
Ms. Luz claims that Defendants violated Massachusetts wage statutes by not paying her for travel time and overtime based on her regular hourly rate, by not paying sufficient mileage reimbursement or any cell phone reimbursement, and by not keeping accurate records of hours worked. In addition, Luz claims that Bayada is liable for breach of contract and on a theory of unjust enrichment. Luz seeks to represent a proposed class only as to her statutory claims.
Defendants have moved for summary judgment in their favor on all claims. Luz has moved for partial summary judgment as to liability on the statutory and breach of contract claims, and for class certification as to the four claims under various wage statutes.
The Court concludes that Luz is entitled to partial summary judgment as to liability on her claims that Bayada violated the Wage Act and breached her employment agreement by not paying the agreed-upon hourly rate for travel time. It cannot resolve on summary judgment whether Bayada failed to pay Luz all overtime she was entitled to receive, or whether David or Mark Baiada is personally liable under the Wage Act. Defendants are entitled to summary judgment in their favor on the claims concerning reimbursements, alleging inadequate recordkeeping, and for unjust enrichment.
The Court will allow class certification only as to the claim that Defendants violated the Wage Act by not paying wages earned for travel time; it will deny class certification as to Luz’s other statutory claims.
 
                                                            -1-
 
1. Summary Judgment Motions.
1.1. Failure to Pay Promised Rate for Travel Time. In Counts 1, 2, and 5 of her complaint, Luz contends that Bayada did not pay the agreed-upon hourly rate for time she spent travelling from one client to another, and also did not pay her for overtime hours based on that rate. Luz asserts that David and Mark Baiada are personally liable for these alleged statutory violations.
1.1.1. Wage Act Claim. Luz is entitled to partial summary judgment as to liability on Count 1. The summary judgment record establishes that Bayada agreed to pay Luz $15.50 per hour, and agreed that she would be paid that rate for time spent providing client care, completing required documentation, and travelling from one client’s home to another. Rather than live up to that agreement, Bayada considered travel time only in calculating whether Luz was being paid at least the minimum wage for all hours worked (including travel time) and whether she was eligible for overtime pay, but otherwise did not pay Luz anything for travel time. That constitutes a violation of the Wage Act, because it is inconsistent with what Bayada promised to pay when it hired Luz.
1.1.1.1. Construing the Orientation Checklist and Agreement of Standards. When Luz was first hired by Bayada, at the end of January 2019, Luz signed an Orientation Checklist that said she would be paid “for time spent providing client care, documentation[,] and travel between cases.” Luz also signed Bayada’s Agreement of Standards that similarly said her “pay, whether hourly or per visit, will include time spent for client care, charting/documentation[,] and travel time.” The Agreement of Standards indicates, just above the signature line, that by signing the document Luz was acknowledging that she read, understood, and agreed to this provision.
These provisions mean what they say. Both of them informed Luz that she would be paid her regular hourly rate for all time worked, whether she was at a client’s home providing care, completing required documentation, or travelling from one client to another. They were an integral part of the at-will employment agreement between Luz and Bayada.
The summary judgment record makes clear that these documents were contracts of adhesion that any home health aide had to accept, with no changes, if they wanted to work for Bayada. “A contract of adhesion is one that is ‘drafted unilaterally by the dominant party and then presented on a ‘take-it-or-leave-it’ basis to the weaker party who has no real opportunity to bargain about its
 
                                                            -2-
 
terms.’ ” Empire Loan of Stoughton, Inc. v. Stanley Convergent Security Solutions, Inc., 94 Mass. App. Ct. 709, 715 (2019), quoting Restatement (Second) of Conflict of Laws § 187, comment b (1971).
The Court must therefore interpret the Orientation Checklist and the Agreement of Standards in the way they would be understood by a typical, reasonable home health aide. When interpreting a standard form contract that was not subject to negotiation, courts must construe the agreement “to effectuate the reasonable expectations of the average member of the public who accepts it.” Brown v. Savings Bank Life Ins. Co., 93 Mass. App. Ct. 572, 581 (2018), quoting James B. Nutter & Co. v. Estate of Murphy, 478 Mass. 664, 670 (2018), quoting in turn Restatement (Second) of Contracts § 211, comment e (1981).
The Court finds that any reasonable home health aide who went to work for Bayada, was told that they would be paid by the hour at a specified rate, and was asked to agree to the same provisions would reasonably understand that they would receive their hourly wage for all work time, including travel time.
To the extent that these provisions are at all ambiguous, they must be construed “strongly against” Bayada, because Bayada is the party that drafted the Orientation Checklist and the Agreement of Standards. See Leblanc v. Friedman, 438 Mass. 592, 599 n.6 (2003), quoting Bowser v. Chalifour, 334 Mass. 348, 352 (1956). “The author of the ambiguous term is held to any reasonable interpretation attributed to that term which is relied on by the other party.” James B. Nutter & Co., 478 Mass. at 669, quoting Merrimack Valley Nat’l Bank v. Baird, 372 Mass. 721, 274 (1977).
This rule applies with particular force where, as here, individuals must accept contract language without change if they wish to do business with a business entity. See, e.g., Lechmere Tire & Sales Co. v. Burwick, 360 Mass. 718, 720–721 (1972) (adhesion contract must be “construed strictly against” party for whom it had been drafted); accord Chase Commercial Corp. v. Owen, 32 Mass. App. Ct. 248, 253 (1992).
This canon of construction “resolves ambiguity against the drafter” and turns what otherwise would be an uncertain instrument into an unambiguous contract. Boland v. George S. May Int'l Co., 81 Mass. App. Ct. 817, 827 (2012); accord, e.g., Costa v. Brait Builders Corp., 463 Mass. 65, 76 (2012); RCS Group, Inc. v. Lamonica Const. Co., Inc., 75 Mass. App. Ct. 613, 620º621 (2009).
 
                                                            -3-
 
1.1.1.2. Bayada’s “Understanding Travel Time” Document. Bayada insists that it is not bound by what it promised to pay Luz, because later in 2019 it issued a new policy called “Understanding Travel Time” stating that “travel hours are not additional hours to be paid” and that the hourly rate paid by Bayada for client care time is set “at an increased rate to accommodate for travel hours between clients.” This policy says that all work time, including travel time, will be counted in determining whether an employee is eligible for overtime pay. But it made clear that if an employee did not work more than 40 hours during a week then they would not get paid anything extra for travel time, and instead would only get paid for time that they spent providing client care (so long as their average hourly wage calculated for all hours worked exceeded the required minimum wage).
If this alternative compensation arrangement had been agreed to by Luz, it would be lawful.
The Wage Act “does not prescribe any particular method by which employees must be paid their wages; and it certainly does dictate that employees in all circumstances must be separately compensated for each and every hour they work.” Salerno v. Bay State Ford, Middlesex Super. Ct. no. 14-8609-D, 2016 WL 513747, at *2 (Mass. Super. Ct. Feb. 5, 2016) (Gordon, J.). “[T]he Wage Act requires no more than that employees be paid on a timely basis and in accordance with the terms of their agreement with their employers,” subject of course to all statutory minimum wage and overtime requirements. Id.
For example, the Wage Act permits an agreed-upon compensation structure in which employees are paid “on an hourly basis for only certain tasks but no compensation for others.” Id.; accord 454 Code Mass. Reg. § 27.02 (definition of “regular hourly rate”); see also 29 Code Fed. Reg. § 778.318(c) (Fair Labor Standards Act permits pay arrangements in which no special hourly rate is assigned to non-productive hours “because it is understood by the parties that the other compensation received by the employee is intended to cover pay for such hours”).[1]
If Bayada had provided the Understanding Travel Time document to Luz, made clear that going forward it would not pay her a separate amount for travel time, and Luz had continued to work for Bayada as a home health aide,
 
--------------------------------------------
 
[1] Regulations construing the FLSA are  appropriate guidance for  interpreting  and applying the Massachusetts Wage Act. See Tam v. Federal Management Co., Inc., 99 Mass. App. Ct. 41, 43 n.6 (2021).
 
                                                            -4-
 
that would establish an agreement to modify the original terms of Luz’s employment and an acceptance of the new policy. “[A]n agreement to modify a contract may be express, or may be inferred from the attendant circumstances and conduct of the parties.” Sea Breeze Estates, LLC v. Jarema, 94 Mass. App. Ct. 210, 217 (2018).
But Bayada has not been able to muster any evidence that it provided Luz with a copy of its Understanding Travel Time document, or ever told her that it was changing its payment policies in a manner consistent with that document. The summary judgment record therefore establishes that Luz’s original agreement with Bayada as to how she would be paid was never altered by or in a manner consistent with the Understanding Travel Time document.
1.1.1.3. Wage Act Violation. Since it is undisputed that Bayada did not pay Luz her agreed-upon hourly rate for travel time, Luz is entitled to partial summary judgment in her favor as to liability for this Wage Act claim.
The Massachusetts Wage Act imposes a statutory obligation upon employers to make timely payment of all wages earned by their employees. It provides that “[e]very person having employees in his service shall pay weekly or biweekly each such employee the wages earned by him….” G.L. c. 149, § 148. “When an employee ‘has completed the labor, service, or performance required of him ... he has “earned” his wage.’ ” Fernandes v. Attleboro Hous. Auth., 470 Mass. 117, 125 n.6 (2014), quoting Awuah v. Coverall N. Am., Inc., 460 Mass. 484, 492 (2011). “The purpose of the Wage Act is ‘to prevent the unreasonable detention of wages.’ ” Melia v. Zenhire, Inc., 462 Mass. 164, 170 (2012), quoting Boston Police Patrolmen's Ass’n v. City of Boston, 435 Mass. 718, 720 (2002).
As discussed above, Bayada made a binding promise to pay Luz the same hourly rate for travel time as for client service time. It cannot simply refuse to pay for mid-shift travel time. See 454 Code Mass. Reg. 27.04(4)(d) (“An employee required or directed to travel from one place to another after the beginning of or before the close of the work day shall be compensated for all travel time and shall be reimbursed for all travel expenses.”).
Bayada’s failure to honor its agreement to pay the same hourly rate for travel time as for client care time violates the Wage Act. Where an employer makes a contractually binding promise to pay someone compensation for their labor or services, the promised compensation constitutes a “wage” within the meaning of the Wage Act. See Parker v. EnerNOC, Inc., 484 Mass. 128, 135 n.11 (2020).
 
                                                            -5-
 
1.1.2. Breach of Contract Claim. Luz is also entitled to partial summary judgment as to liability on Count 5. This claim for breach of contract mirrors Luz’s claim under the Wage Act, as it is based on the same allegation that Bayada made a binding agreement to pay Luz the same hourly rate for travel time as it did for client care time. Bayada concedes, at page 20 of its affirmative memorandum, that the Agreement of Standards signed by Luz constitutes a valid contract that “sets forth the terms and conditions of her employment.” Luz is entitled to summary judgment as to Bayada’s liability for breach of contract for the reasons discussed above.
1.1.3. Overtime Claim. The Court cannot resolve Luz’s claim for overtime pay in Count 2 on summary judgment.
It is undisputed that Luz “regularly worked” more than 40 hours per week while employed by Bayada. Which means that she was entitled to be paid overtime for those extra hours “at a rate not less than one and one half times the regular rate” that Bayada had agreed to pay her. See G.L. c. 150, § 1A. As discussed above, Bayada agreed to pay Luz an hourly wage for all hours worked, including travel time. In a case like this, “the rate paid to hourly employees forms the basis for calculating overtime.” Mullally v. Waste Mgt. of Massachusetts, Inc., 452 Mass. 526, 535 (2008)
Luz is not entitled to partial summary judgment on this claim because she has not presented evidence demonstrating that Bayada failed to pay her the required overtime wage. She points to hypothetical examples from Bayada’s Understanding Travel Time document that strongly suggests she was not paid a proper overtime wage. However, on a motion for summary judgment the Court “must … draw all reasonable inferences” from the evidence presented “in favor of the nonmoving party,” as a jury or judicial fact finder would be free to do at trial. Godfrey v. Globe Newspaper Co., Inc., 457 Mass. 113, 119 (2010); see also O’Connor v. Redstone, 452 Mass. 537, 540 (2008) (in deciding motion for summary judgment, court must “view[] the evidence indulgently in favor of the nonmoving party and without considering witness credibility, weighing the evidence, or making findings of fact”). Under this standard, the Court is unable to conclude as a matter of law that Luz is entitled to judgment in her favor on this claim.
But Bayada and the individual defendants are not entitled to summary judgment on this claim either. Applying the same standard, the Court
 
                                                            -6-
 
recognizes that a factfinder at trial could infer from this record that Bayada did not pay Luz time-and-a-half for overtime.
1.1.4. Personal Liability of David and Mark Baiada. The Court cannot determine on the summary judgment record whether David Baiada (the CEO of the Bayada company) or Mark Baiada (the chair of the corporation’s board of trustees) is personally liable for Bayada’s failure to pay Ms. Luz the full amount of wages and overtime compensation to which she is entitled.
Luz has properly brought suit under the Wage Act, G.L. c. 149, § 148, to remedy Bayada’s failure to pay her all regular and overtime wages that she had earned. “Section 148 applies to all wages earned, including those prescribed by statute.” Sutton v. Jordan’s Furniture, Inc., 493 Mass. 728, 740 (2024). A failure to pay one and one-half times an employee’s regular wage when such bonus pay is required by statute is therefore a violation of the Wage Act and will give rise to a private right of action under G.L. c. 149, § 148. Id. at 739–740 (Sunday pay under prior version of G.L. c. 136, § 6(50)); Drive-O-Rama, Inc. v. Attorney Gen., 63 Mass. App. Ct. 769, 769–770 (2005) (legal holiday pay under G.L. c. 136, § 13). The same is true for overtime pay, even though c. 150 also provides for an alternative private right of action. Crocker v. Townsend Oil Co., Inc., 464 Mass. 1, 6–7 (2012).
Under § 148, the president and treasurer of a corporation, and any other officer or agent “having the management of such corporation,” is personally liable for a corporation’s violation of the Wage Act. See G.L. c. 149, § 148.
This provision imposes liability on a corporation’s president, treasurer, and “other officers or agents who may not hold these titles, but who have assumed and accepted as individuals significant management responsibilities over the corporation similar to those performed by a corporate president or treasurer, particularly in regard to the control of finances or payment of wages.” Segal v. Genitrix, LLC, 478 Mass. 551, 559 (2017). In other words, it extends liability to “a manager who ‘controls, directs, and participates to a substantial degree in formulating and determining’ the financial policy of a business entity.” Cook v. Patient Edu, LLC, 465 Mass. 548, 449 (2013), quoting Wiedmann v. The Bradford
Group, Inc., 444 Mass. 698, 711 (2005).
“In the context of corporate law, an executive officer is generally considered an agent of the company, because he or she acts on the corporation’s behalf, subject to the corporation’s control, as exercised through the board of
 
                                                            -7-
 
directors.” Segal, 478 Mass. at 562. “By contrast, ‘[n]either the board of directors nor an individual director … is, as such, an agent of the corporation.’ “ Id., quoting Restatement (Second) of Agency, § 14C (1958).
An individual board member is personally liable under the Wage Act only if they have an express or implied agency relationship with the corporation, and have “been empowered to act as the functional equivalent of the president or treasurer of the corporation.” Id. at 563.
The summary judgment record does not contain evidence sufficient to establish whether either of the individual defendants was responsible for overall management of Bayada. Nor did the parties address whether either of them could be held personally liable for Bayada’s Wage Act violation. Therefore the Court cannot resolve this issue on summary judgment.
1.2. Reimbursement Claim. In Count 3, Luz claims that Bayada broke Massachusetts law by not paying her any reimbursement for cell phone costs and by paying an insufficient reimbursement for mileage.
Luz says that she does not oppose summary judgment in Defendants’ favor “as to the portion of Count 3 related to the failure to reimburse Plaintiff and the Class for the use of personal cell phones.”
Turning to the mileage part of this claim, Luz asserts that, although Bayada reimbursed her for mileage she drove between client appointments, it broke the law by paying too low a rate per mile. Bayada reimbursed employees at the rate of 45 cents per mile until sometime in 2021, and at 55 cents per mile thereafter. Luz contends that Bayada was required to pay the higher mileage rates authorized by the Internal Revenue Service.
This claim has no legal basis. Luz has not identified any Massachusetts statute, regulation, or interpretive case law that requires employers to pay the IRS mileage rate. Nor has she mustered any evidence that the rate paid by Bayada failed to cover her actual costs.
1.3. Record Keeping Claim. In Count 4 of her complaint, Luz claims that Defendants violated their statutory obligation under G.L. c. 150, § 15, to keep accurate records of the hours that she worked. Defendant are entitled to summary judgment on this claim because there is no private right of action to enforce § 15. See Grogan v. All My Sons Business Development LLC, 552 F.Supp.3d 142, 147 (D.Mass. 2021) (Saris , J.) (there is no separate cause of action” to enforce G.L. c. 150, § 15, “where an employer fails to keep accurate records”).
 
                                                            -8-
 
Courts should be “reluctant to infer a private cause of action from a statute in the absence of some indication from the Legislature supporting such an inference.” Boston Med. Ctr. Corp. v. Secretary of the Executive Office of Health and Human Servs., 463 Mass. 477, 454 (2012), quoting Loffredo v. Center for Addictive Behaviors, 426 Mass. 541, 544 (1998). “A statutory duty by itself does not necessarily imply a judicial remedy to challenge the executive branch’s compliance with that duty.” Id., 463 Mass. at 455. Instead, “a clear legislative intent is necessary to infer a private cause of action from a statute.” Sullivan v. Chief Justice for Admin. & Mgt. of Trial Court, 448 Mass. 15, 38 (2006), quoting Loffredo, 426 Mass. at 543. If a statute “does not reasonably include a right of action, none can be implied. The argument of hardship or unintentional omission is not enough.” Mitchell v. Mitchell, 312 Mass. 154, 161 (1942).
The Legislature has required employers to keep accurate records of the hours worked by and amounts paid to each employee. See G.L. c. 150, § 15. Any employer, officer, or agent that fails to do so is subject to a civil citation and fine by the Attorney General. See G.L. c. 151, § 19(3) (authorizing civil citations or orders pursuant to G.L. c. 149, § 27C, for a recordkeeping violation). Although the Legislature provided a private right of action to enforce other parts of c. 150, for example in the overtime pay statute codified at G.L. c. 150, § 1B, it has not similarly provided any private right to enforce § 15.
That the Legislature provided for enforcement of the recordkeeping statute by the Attorney General, “combined with its specific provision of a private right of action” to enforce the overtime pay statute (G.L. c. 150, § 1B) but not for the related recordkeeping statute (G.L. c. 150, § 15), “weighs heavily against recognizing a private right of action” under § 15. Salvas v. Wal-Mart Stores, Inc., 452 Mass. 337, 373 (2008) (no private right of action to enforce meal period rule of G.L. c. 149, § 100, where Legislature created express rights to enforce other parts of c. 149).
Where, as here, “a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.” Loffredo, 426 Mass. at 574, quoting Transamerica Mtge. Advisors, Inc. v. Lewis, 444 U.S. 11, 19 (1979); see also Committee to Protect Access to Quality Dental Care v. Secretary of the Commonwealth, 480 Mass. 1008, 1051 (2022) (where one section of General Laws expressly provides private right of action, and related section of same chapter does not, courts should not construe the latter section as containing implied
 
                                                            -9-
 
private right of action); Fratus v. Town of Harwich, 100 Mass. App. Ct. 27, 29 (2021) (same).
1.4. Unjust Enrichment Claim. Luz may not press her claim for unjust enrichment in Count 6 because she has an adequate remedy under the Wage Act, the overtime pay statute, and for breach of contract. See Santagate v. Tower, 64 Mass. App. Ct. 324, 329 (2005) (“An equitable remedy for unjust enrichment is not available to a party with an adequate remedy at law.”); DaSilva v. Border Transfer of MA, Inc., 227 F.Supp.3d 154, 160 (D.Mass. 2017) (Saris, C.J.) (Wage Act “is available as a statutory remedy, and that is sufficient to bar [a claim for] unjust enrichment”).
In addition, Luz has failed to muster any evidence that Bayada’s mileage reimbursement was so low as to be unjust. That is an independent reason why defendants are entitled to  summary  judgment  on  this  part  of  Count  6.  See generally Roman v. Trustees of Tufts College,  461  Mass.  707,  711  (2012) (“A nonmoving party’s failure to establish an essential element of her claim ‘renders all other facts immaterial’ and mandates summary judgment in favor of the moving party.”) (quoting Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991)).
2. Class Certification Motion. Luz is entitled to class certification as to the travel time claim in Count 1, but not as to the other statutory claims.
2.1. Standards for Class Certification. To obtain certification of a class in this case, Plaintiffs must demonstrate that “(1) the class is so numerous that joinder of all members is impracticable” [numerosity], “(2) there are questions of law or fact common to the class” [commonality], “(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class” [typicality], and “(4) the representative parties will fairly and adequately protect the interests of the class” [adequacy of representation]. See Mass. R. Civ. P. 23(a). If these requirements are met, Plaintiffs must also show “that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members,” [predominance] and “that a class action is superior to other available methods for the fair and efficient adjudication of the controversy” [superiority]. See Mass. R. Civ. P. 23(b).
In applying these standards, a judge has “broad discretion” to certify a class, or not to do so. Salvas, 452 Mass. at 361.
 
                                                            -10-
 
“[A] party moving for class certification need only provide ‘information sufficient to enable the motion judge to form a reasonable judgment’ that certification requirements are met.” Aspinall v. Philip Morris Cos. Inc., 442 Mass. 381, 391–392 (2004), quoting Weld v. Glaxo Wellcome Inc., 434 Mass. 81, 87 (2001).
Whether Plaintiffs can ultimately prevail is not a relevant consideration in deciding whether class certification is appropriate. See Weld, 434 Mass. at 85 (it would be an abuse of discretion to deny class status “by imposing, at the certification stage, the burden of proof that will be required of the plaintiffs at trial”). “[N]either the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies the Rule.”  Salvas,  452 Mass. at 363, quoting Weld, supra, at 87.
2.2. Count 1—Travel Time Claim. For the reasons discussed below, and in the exercise of its broad discretion, the Court concludes that it is appropriate to certify a plaintiff class with respect to the claim for unpaid travel time in Count 1 of the complaint.
This claim is subject to a three-year limitation period. See G.L. c. 148, § 150. Luz does not contend that she filed an earlier complaint with the Attorney General, that would have tolled the limitation period. Id. The Court will therefore certify this class with respect to Bayada employees who were eligible for travel pay during the three years before Luz filed this action.
2.2.1. Numerosity. Luz represents, and Bayada does not dispute, that at least 4,500 current or former Bayada home health aides were required to travel between patient appointments during the six years before this action was filed. The Court infers that at least several thousand current or former Bayada employees were required to do so during the three years before Luz filed her complaint. This easily satisfies the numerosity requirement. Cf. Gammella v. P.F. Chang’s China Bistro, Inc., 482 Mass. 1, 12 (2019) (reversible error to deny class certification for lack of numerosity where class included “hundreds of employees”); Layes v. RHP Properties, Inc., 95 Mass. App. Ct. 804, 823 (2019). (“a class of 240 members is sufficiently numerous to qualify for class treatment”).
Bayada insists that class certification is nonetheless improper because Luz “has failed to identify other individuals who allegedly had the same experiences.”
 
                                                            -11-
 
This argument is without merit. That a plaintiff cannot identify any other proposed class members, and will not be able to do so without further discovery, is not “a proper grounds to deny certification.” Gammella, 482 Mass. at 20.
The Court concludes that joining all class members, or even a substantial subset of all class members, as individual plaintiffs would add significant expense and complexity to this lawsuit without any offsetting advantage, and that such joinder is therefore impracticable. Joinder of all class members as individual plaintiffs is “impracticable” within the meaning of Rule 23 if doing so would be “impractical, unwise or imprudent;” plaintiffs need not show that joiner is “impossible or incapable of being performed.” Brophy v. School Comm. of Worcester, 6 Mass. App. Ct. 731, 735 (1978).
2.2.2. Commonality. The Court finds that the requirement of commonality is also satisfied here. The claims in this case turn on questions of fact and law that are common to all members of the proposed class, and that can be answered uniformly for all or most of the proposed class members, including whether Bayada promised to pay employees agreed-upon amounts per hour for client care and travel time, but failed to pay the promised amounts for travel time.
Bayada does not contend that it provided the Understanding Travel Time document to any other home health aides, or that other putative class members agreed to keep working for Bayada after being told that they would be paid for travel time in the manner described in that document.
2.2.3. Typicality. The Court finds that the requirement of typicality is satisfied here. “Typicality is established when there is ‘a sufficient relationship … between the injury to the named plaintiff and the conduct affecting the class,’ and the claims of the named plaintiff[s] and those of the class ‘are based on the same legal theory.’ ” Weld, 434 Mass. at 87, quoting 1 H. Newberg, Class Actions § 3.13, at 3–76 (3d ed. 1992). “A plaintiff representative normally satisfies the typicality requirement with ‘an allegation that the defendant acted consistently toward the [representative and the] members of a putative class” (bracketed material in original). Id., quoting Fletcher v. Cape Cod Gas Co., 394 Mass. 595, 606 (1985).
Luz has made an adequate showing that Bayada acted consistently toward all class members by promising in the Agreement of Standards to pay them a fixed
 
                                                            -12-
 
hourly rate that would apply to both client care time and to travel time, but then failing to pay that amount for travel time.
2.2.4. Adequacy or Representation. Defendants say that “do not dispute the adequacy and experience of Plaintiff’s counsel.”
The Court finds that Kim Luz will also fairly and adequately protect the interests of the class. Ms. Luz has shown that she is a suitable class representative through her active involvement in this case to date.
2.2.5. Predominance. The Court concludes that the common liability issue discussed above predominate over questions that affect only individual class members, and that Luz’s travel time claim is “sufficiently cohesive” to warrant adjudication by class representatives. Cf. Salvas, 452 Mass. at 364, quoting Amchem Prods., Inc. v. Windsor, 421 U.S. 591, 623 (1977)
The requirement that issues common to the class predominate “does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof.” Amgen, Inc. v. Connecticut Retirement Plans and Trust Funds, 568 U.S. 455, 469 (2013). “Rather, the question is whether there is ‘reason to think that [individualized] questions will overwhelm common ones and render class certification inappropriate....’” In re Nexium Antitrust Litig., 777 F.3d 9, 21 (1st Cir. 2015), quoting Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258, 276 (2014).[2] The Court is persuaded that any individual issues will not overwhelm the critical common questions of liability.
Though individualized inquiry may be needed to assess damages, if the class were to prevail on the merits, “such necessity at the damages stage does not preclude class certification where all  other  requirements  are  met.”  Weld,  434 Mass. at 92. Class certification is appropriate because “common issues of law and fact … form the nucleus of a liability claim, even though the appropriateness of class action treatment in the damages phase is an open question.” Salvas, 452 Mass. at 364.
 
--------------------------------------------
 
[2] Although Amgen, In re Nexium, and Halliburton were decided under the federal rules of civil procedure, the same principle applies here. See generally Smaland Beach Ass’n, Inc. v. Genova, 461 Mass. 214, 228 (2012) (judicial construction of federal rules of civil procedure applies to parallel Massachusetts rules, “absent compelling reasons to the contrary or significant differences in content” (quoting Strom v. American Honda Motor Co., 423 Mass. 330, 335 (1996), and Rollins Envtl. Servs., Inc., v. Superior Court, 368 Mass. 174, 180 (1975)).
 
                                                            -13-
 
2.2.6. Superiority. Finally, the Court concludes that a class action is superior to other available methods for the fair and efficient adjudication of the claim asserted in Count 1. A class action is decidedly superior because it will aggregate many small claims into a proceeding where they may be resolved economically. See Weld, 434 Mass. at 93; Hazel’s Cup & Saucer, LLC v. Around the Globe Travel, Inc., 86 Mass. App. Ct. 164, 166 (2014).
2.3. Count 2—Overtime Claim. In contrast, the Court finds that with respect to the overtime pay claim in Count 2 the proposed class would not meet the requirements under Rule 23 for predominance and superiority.
The Court finds that individualized proof, analysis, and findings would be required to determine whether any putative class member was eligible for overtime pay and, if so, whether Bayada failed to pay overtime at rate required by statute.
Because the issue of liability under Count 2 requires individualized proof and cannot be decided on a class wide basis, common issues are unlikely to predominate over individual ones, a class action is unlikely to be superior to individual adjudication of claims, and denial of class certification as to this claim is therefore appropriate. See Fletcher, 394 Mass. at 603–604 (affirming denial of class certification); see also Moelis v. Berkshire Life Inc. Co., 451 Mass. 483, 490 (2008) (affirming denial of class certification for c. 93A claim because individualized inquiry was needed to resolve statute of limitations defense).
There is a difference between determining the extent of harm (the question of damages) and deciding whether there was any harm at all (which goes to liability). “While obstacles to calculating damages may not preclude class certification, the putative class must first demonstrate economic loss on a common basis.” Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 189 (3d Cir. 2001).
2.4. Counts 3 and 4—Reimbursement and Recordkeeping Claims. For the reasons discussed above, Defendants are entitled to summary judgment as to Luz’s claims as to mileage reimbursement and under the recordkeeping statute (G.L. c. 150, § 15). The Court will therefore deny class certification as to those claims.
 
                                                            -14-
 
ORDERS
Defendants’ motion for summary judgment is allowed in part with respect to the mileage and cell phone reimbursement claim in Count 3 of the complaint, the recordkeeping claim in Count 4, and the unjust enrichment claim in  Count 6. This motion denied in part with respect to the Wage Act claim for travel time pay in Count 1, the overtime pay claim Count 2, and the contract claim in Count 5.
Plaintiffs’ motion for partial summary judgment as to liability is allowed in part with respect to the Wage Act claim for travel time pay in Count 1, and is otherwise denied.
Plaintiffs’ motion for class certification is allowed in part as to the Wage Act claim for travel time pay in Count 1 of the complaint and is otherwise denied. The Court hereby certifies the following class only with respect to the claim in Count 1:
All current and former hourly employees of BAYADA Home Health Care, Inc., who provided services to Bayada patients in Massachusetts and were required to travel between patient appointments during the period from June 16, 2018, to the present.
It further orders that plaintiff Kim Luz shall be the class representative and that Carlin Phillips and Andrew J. Garcia shall be class counsel.
A final pre-trial conference will be held on August 28, 2024, at 2:00 p.m. The parties shall file their joint pretrial memorandum by August 23, 2024.